HALL, Judge.
Gray Towing Company, Inc., sued Hayes-Sammons Chemical Co. and Mission Mud Company of Louisiana, Inc., jointly and in solido for $14,640.83 on an open account for barging and transportation services rendered. Mission Mud Company of Louisiana, Inc., failed to make a defense and a preliminary default was entered against it. After trial on the merits judgment by default was rendered against Mission Mud Company of Louisiana, Inc., for the full amount prayed for and plaintiff’s suit against Playes-Sammons Chemical Co. was dismissed. The default judgment against Mission Mud Company of Louisiana, Inc., is now final and that corporation is bankrupt.
*881 Plaintiff prosecutes this appeal from that part of the judgment which dismissed its suit against Hayes-Sammons Chemical Co.
Hayes-Sammons Chemical Co. is a manufacturer of oil well drilling mud and allied materials. At all times pertinent hereto Mission Mud Company of Louisiana Inc. was engaged in the business of selling drilling mud and other drilling materials. Gray Towing Company, Inc., the plaintiff herein, is engaged in the business of barging drilling materials from warehouses located in the New Orleans area to various drilling sites both inland and off-shore.
The transportation services in the instant case were rendered by plaintiff at the request of Mission Mud Company of Louisiana, Inc., but plaintiff contends that the materials transported bore the Hayes-Sam-mons Chemical Co. label; that Mission Mud Company of Louisiana, Inc., was acting as the agent of Hayes-Sammons Chemical Co. and seeks to hold the latter company liable for the charges on that theory.
There is no contest relative to the amount of the charges. The sole question involved is whether an agency, actual or implied, existed between Hayes-Sammons and Mission Mud. The Trial Court held that plaintiff was charged with the burden of establishing the agency relationship and that plaintiff did not sustain its burden of proof.
The record clearly reveals that plaintiff contracted with Mission Mud for the transportation of the materials; that plaintiff from the beginning dealt exclusively with the representatives of Mission Mud and that all of its services without exception were ordered by and rendered to Mission Mud; that it extended credit to Mission Mud; that all of plaintiff’s invoices without exception were issued to Mission Mud; that the account was carried on plaintiff’s books in the name of Mission Mud; that plaintiff never billed anyone but Mission Mud; that no payments on account were ever made by anyone except Mission Mud; that plaintiff never made any demands on Hayes-Sam-mons until after the whole debt was incurred and Mission Mud was in serious financial difficulties.
The record further reveals that Mission Mud dealt in products other than those of Hayes-Sammons; that materials transported by plaintiff for Mission Mud included products manufactured and supplied by others to Mission Mud as well as products manufactured by Hayes-Sammons; that plaintiff’s transportation charges to Mission Mud covered both without any distinction being made. The record contains no proof of any sort as to what was charged by plaintiff for transportation of products manufactured by Hayes-Sammons and what was charged for transportation of products manufactured by others.
In attempting to prove that an agency relationship existed between Mission Mud and Hayes-Sammons plaintiff relies heavily upon the provisions in the agreement between the two corporations.
 After he had been doing business with Mission Mud for some time, plaintiff’s president, Mr. Womack, was shown by Mission Mud a copy of its contract with Hayes-Sammons. In this contract the terms “Exclusive Agent,” “Commission” and “Agent” were used to designate the contractual relationship between the parties. But we agree with the holding of the Trial Court that the use of the words mentioned and the other provisions of the contract are not sufficient to establish an agency relationship between the parties in view of the actions of the parties with relation to the agreement and their dealings with each other thereunder. Considering the actions and dealings of the parties we are of the opinion, as was the Trial Judge, that the contract was one of distributorship rather than one of agency.
Hayes-Sammons did not sell its products direct to users, but sold them only through dealers. Hayes-Sammons’ products were consigned to Mission Mud at a price F.O.B. *882 Mission Mud’s warehouses in the New Orleans area. Mission Mud sold to and made all deliveries to the consumers. It set its own retail prices which were F.O.B. the well sites. Mission Mud also rendered certain engineering services to the customer which were included in its retail prices. Mission Mud operated its business independently of Hayes-Sammons, hiring, paying and firing its own employees, renting and paying the rent on all of its warehouses, except one which was handled for the convenience of Mission Mud by Hayes-Sam-mons. Even with reference to that warehouse Mission Mud owed and paid rental to Hayes-Sammons. There is no proof that Mission Mud was restricted in its sales to any customers or persons by Hayes-Sammons. There is no proof that Hayes-Sammons either controlled, or sought to control Mission Mud in its operations.
Mission Mud’s sales of Hayes-Sammons’ products were invoiced to the customers by and in the name of Mission Mud except as to certain customers who insisted on so called “National billing procedure,” which means that in order to eliminate the bother of receiving bills from various and sundry distributors of a particular manufacturer’s product these customers required all billing and collections to be handled by the manufacturer regardless of what dealer sold the product to them. It is shown that this procedure is quite common with the major oil companies.
In the cases where national billing procedure was required Hayes-Sammons issued the invoices to the customer in its own name, covering the retail price fixed by Mission Mud including Mission Mud’s transportation and engineering costs. Upon collection of the account Hayes-Sammons remitted to Mission Mud the difference between the amount collected and its price to Mission Mud.
In all sales by Mission Mud of Hayes-Sammons’ products which were not governed by “national billing procedure,” Mission Mud invoiced the customers direct in its own name, and upon collection, remitted to Hayes-Sammons the price at which Hayes-Sammons delivered the product to it.
Judged by their actions thereunder the contract between Mission Mud and Hayes-Sammons was one of distributorship rather than agency, and there is no proof that plaintiff relied on Hayes-Sammons at the time it extended credit to Mission Mud or at any other time.
Plaintiff never made demand on Hayes-Sammons to pay the delinquent account of Mission Mud. While it is true that in May or June 1963 plaintiff endeavored to get an admission from Hayes-Sammons that Mission Mud was its agent and endeavored to get Hayes-Sammons to accept an assignment to plaintiff by Mission Mud of all funds due or to become due to Mission Mud by Hayes-Sammons there was no demand made on Hayes-Sammons to pay any part of the delinquent account from its own funds. Moreover this was long after the debt was incurred and after the account had been closed. Hayes-Sammons refused to accept the assignment or to admit any agency.
Plaintiff urges that the use by Mission Mud of Hayes-Sammons’ stationery, delivery tickets, and trade decals on vehicles, equipment and office furniture was sufficient to show the existence of an agency relationship. We are in accord with the following observations and conclusion of the Trial Judge:
“ * * * Such practices are common not only in agency relationships but also in distributorship relations and certainly could not alone be considered to support a finding that an agency did in fact exist. However, this court need not delve into this question, for plaintiff failed to establish that it or any of its officials relied on or were led to believe that an agency existed because of the use of the advertising paraphernalia mentioned. It appears to *883 this court that plaintiff’s attorneys seek through isolated instances to establish a reliance by plaintiff 'after the fact’ on a relationship which did not exist and on which plaintiff did not rely at the time the transactions took place and the credit was extended. Plaintiff did not sustain its burden of proof to establish either the existence of an agency, actual or implied, or its reliance on representations by defendant, Hayes-Sammons Company, Inc.”
For the foregoing reasons the judgment appealed from is affirmed.
Affirmed.