242 So.2d 306 (1970)
WEATHERMASTERS PARTS & SERVICE, INC.
v.
D. C. McCAY.
No. 4206.
Court of Appeal of Louisiana, Fourth Circuit.
December 7, 1970.
Rehearing Denied January 11, 1971.
*307 Henry F. Mestayer, New Orleans, for plaintiff-appellee.
Nicaud, Justrabo, Rousset & Schafer, Thomas E. Schafer, III, New Orleans, for defendant-appellant.
Phelps, Dunbar, Marks, Claverie & Sims, Eugene R. Preaus, New Orleans, for The Trane Co., third-party defendant-appellee.
Before SAMUEL, REDMANN and LeSUEUR, JJ.
REDMANN, Judge.
Plaintiff air conditioning service company sued for its charges for various services rendered to defendant including two charges for replacement of a central air *308 conditioning compressor. Defendant had questioned the amount of some charges and denied liability for the second compressor installation cost of $171.75, alleging the first compressor either was faultily installed or was defective. By third party petition defendant alternatively demanded the second installation's cost from the manufacturer, The Trane Company.
The compressor had been furnished by the manufacturer under a warranty obligation to replace the compressor during the second through fifth years after original installation. (The compressor was not originally installed by plaintiff.)
From a judgment awarding plaintiff the full amount of its charges and dismissing the third-party demand, defendant appeals.
The first replacement compressor failed 27 days after its installation. The only evidence on the cause of failure is that given by plaintiff's president (himself an active repairman with some 24 years of experience) and the serviceman who actually diagnosed the need for a second replacement (and who had 16 years of experience). Their testimony is that some fault in the compressor's valve system caused the compressor not to compress the refrigerant. This defect was shown by both pressure gauge and ammeter readings.
Defendant argues that, even though the compressor supplied by Trane was at fault, plaintiff still should not recover the second installation cost from defendant. Defendant's theory is that the serviceman impliedly warrants not only that it will properly install the compressor, but also that when installed the compressor will serve its purpose.
It appears to us that the material question in this regard is whether plaintiff's contract was only to install, or to furnish and install, C.C. art. 2757.
If the contract is only to install, then if the first installation job had been destroyed before completion "owing to the badness of the materials", the contractor would be entitled to his pay, art. 2760. Where the work has been completed but thereafter becomes unserviceable owing to materials not furnished by the contractor, then, by pari materia analogy, arts. 17 and 21, the contractor ought still to be entitled to his pay because he has fully performed his contract to install. See also art. 2769, making the contractor liable for damages only for non-compliance with his contract.
If the contract is both to furnish and to install, then all risk of loss prior to delivery is on the contractor, art. 2758. After delivery, the contractor remains liable for damages caused by his non-compliance with the contract, art. 2769, and his obligation to furnish, meaning an obligation to furnish materials of reasonably good and serviceable quality, would have been breached.
We believe we must categorize our case as one where the contractor does not supply the materials. The record does not disclose the relationship, if any, between plaintiff and Trane. There is not shown any actual or apparent agency, which might have justified a belief (and reliance thereon) that, in dealing with plaintiff, defendant was really dealing with Trane. There is a showing that in one respect plaintiff "took orders" from Trane by installing additional equipment Trane supplied, for installing which Trane allowed plaintiff a $25 credit. All that the other evidence shows is that plaintiff services Trane's and at least four other manufacturers' equipment. We do not ignore the frequent circumstance that a homeowner might select a repairman because the manufacturer has "approved" or "authorized" that repairman for servicing the manufacturer's equipment. Still there are no circumstances shown from which we might infer either a warranty by the repairman of the soundness of the manufacturer's parts supplied under its warranty obligation, or any other responsibility of the repairman for defective parts thus supplied.
We conclude that the only contract shown for the first replacement is one to *309 furnish labor and industry to install a compressor, furnished by defendant's warrantor, Trane. That contract was, so far as is shown, properly performed and plaintiff is entitled to be paid for its performance.
When that compressor failed, and plaintiff again furnished labor to install the second replacement, it is not as clear that defendant either expressly or impliedly agreed to pay for the second installation. Defendant may reasonably have believed that Trane would bear that cost, and that plaintiff (as an "authorized" Trane service company?) was acting for or at least would settle with Trane. But it is not shown that defendant communicated this expectation to plaintiff, nor that plaintiff represented itself as authorized to perform Trane's warranty obligations for Trane. We therefore conclude, for lack of evidence to the contrary, that plaintiff is entirely independent of and unrelated to Trane, and we must find an implied agreement by defendant to pay plaintiff for the second installation, unless the second installation had been made necessary by plaintiff's improper performance of the first installation.
It is true that defendant was in a dilemma, since he could not know whether the necessity for the second installation was due to plaintiff's or Trane's fault. If he paid plaintiff and sued Trane, he might be unable to prove Trane's liability. He had either to sue both for a declaratory judgment, or to wait for plaintiff to sue him and then third-party Trane. He would have the unrecoverable expense of a lawyer in either case. Yet there is no suggestion from any quarter that it was his fault the first repair job failed.
The only evidence in the record on the cause of failure shows that Trane supplied an unserviceable compressor.
Trane's plea of one-year tort prescription must be overruled. Trane's warranty obligation to supply a compressor is a contractual obligation. The demand against Trane is not based on mere negligence or breach of general duty, but on breach of the contractual warranty obligation to supply a compressor reasonably suited to the purpose for which intended. The supplying of a compressor which fails in 27 days is not a performance but a breach of that contractual obligation.
The question was suggested, in oral argument, whether Trane has any contractual privity with defendant. It appears to us that a manufacturer's warranty is intended for the benefit of the ultimate purchaser and makes him a third-party beneficiary of the contract of original sale to a distributor or installer, entitled to enforce the warranty obligation, C.C. art. 1890, which is surely part of the ultimate purchaser's motive for purchasing the manufacturer's product.
Trane's breach of its warranty obligation necessitated the second installation, for the cost of which it is liable.
We have previously noted that plaintiff, in the first installation, in installing certain additional equipment besides the compressor, acted on Trane's instructions. Defendant had not requested this additional installation but plaintiff performed it because Trane required it for the continuance of its compressor warranty. Trane apparently recognized it could not place conditions on its existing warranty obligation, and it therefore allowed to plaintiff a $25 credit for cost of installing this extra equipment. Plaintiff allowed the credit to defendant, but its charge for labor at $10 an hour included four hours for this installation. We cannot infer defendant's consent to this unordered charge at a higher price than Trane provided, and the $15 difference between charge and credit, plus sales tax, must be disallowed.
Accordingly, that part of the judgment appealed from in favor of plaintiff and against defendant on the main demand is amended by reducing its principal amount to four hundred twenty-eight and 76/100 *310 dollars, and as amended is affirmed; and that part of the judgment dismissing defendant's third party remand is reversed, and judgment is now rendered in favor of D. C. McCay and against The Trane Company in the amount of one hundred seventy-one and 75/100 dollars with legal interest from judicial demand until paid and for all costs of this suit.
Amended and affirmed in part; reversed and rendered in part.