814 So.2d 69 (2002)
INSTANT PRINT CENTERS, INC.
v.
Bruce CROWLEY D/B/A the Gregory Advertising Group.
No. 2001 CA 0336.
Court of Appeal of Louisiana, First Circuit.
March 28, 2002.
Ernest M. Forbes, Denham Springs, for Plaintiff/Appellant, Instant Print Centers, Inc.
Alexis A. St. Amant, II, Baton Rouge, for Defendant/Appellee, Bruce Crowley d/b/a The Gregory Advertising Group.
Before: WHIPPLE, FOGG and GUIDRY, JJ.
*70 WHIPPLE, J.
This is an appeal from an April 6, 2000 judgment of the Baton Rouge City Court dismissing a suit on open account filed by appellant, Instant Print Centers, Inc. (IPC), against appellee, Bruce Crowley d/b/a The Gregory Advertising Group (GAG). IPC sought damages in the amount of $15,333.46, representing unpaid charges for printing services and finance charges, legal interest, reasonable attorney's fees, and costs. For the following reasons, we reverse.

DISCUSSION
David Miller Doucet, president and co-owner of IPC, testified at trial as follows. IPC is a commercial printing company specializing in the print production of marketing and sales materials, catalogs, newsletters, small magazines, pocket folders, and inserts. The relationship between IPC and GAG began after IPC was contacted by John Lee Smith, who advised IPC he worked for The Gregory Advertising Group and wanted IPC to do "some work for him." At his initial meeting with Doucet, Smith advised Doucet that Crowley was the owner of GAG. Thereafter, Doucet met with Crowley personally upon going to GAG's office to take Smith out to lunch. During this meeting, "general business" was discussed and Doucet thanked Crowley for "the work." On at least two other occasions, Doucet also spoke to Crowley on the telephone concerning work IPC was doing for GAG. Doucet stated he believed Crowley was IPC's customer and was never advised by anyone from GAG that GAG was incorporated.
The testimony and documents introduced in evidence reflect that IPC did various printing jobs and projects for GAG from approximately September, 1998 to May, 1999 and sent a total of twenty invoices to GAG. The invoices state, "Sold To: The Gregory Advertising Group." Thirty-six itemized quotations/estimates of cost for projects were also introduced into evidence. The quotations reference the customer as either "The Gregory Advertising Group" or "Gregory Advertising." Doucet testified that GAG paid five of the invoices, representing over 50 percent of the total work performed by IPC. Doucet also testified regarding two business cards introduced into evidence by IPC. Doucet testified that Smith gave Doucet his business card, which states, "JOHN LEE SMITH" "VICE PRESIDENT" "THE GREGORY ADVERTISING GROUP" at one of his meetings with Doucet. IPC also introduced into evidence a business card that it received which states, "Todd R. Napier" "Director Sales & Marketing" "THE GREGORY GROUP."
Crowley testified at trial as follows. He is president and sole shareholder of GAG, which is incorporated. He stated that Smith is vice-president of GAG, Inc. and had authority to make contracts on behalf of GAG, Inc. Crowley contended he had no input in the business between GAG and IPC, but "remember[ed] somebody coming into [his] office from IPC." However, he claimed he did not "discuss" with Smith any of Smith's actions in contacting IPC and entering into an agreement. Crowley testified he only knew of the work done by IPC for GAG "through [his] vice-president." He did not dispute that IPC had done the work, that GAG had received the work, and that IPC had not been paid in full. His only defense to IPC's lawsuit was that the money sought was a corporate debt rather than his personal debt. Crowley relied upon the fact that the checks, which IPC had received from GAG, were written on the account of "THE GREGORY GROUP, INC." However, Doucet testified he would not have *71 personally seen the checks because his accountant would have processed them for IPC. Moreover, when asked if he had any recollection of the meeting between himself and Doucet, as testified to by Doucet, Crowley answered, "I recollect meeting somebody, I do not recognize him as the person, but I believe I remember somebody coming into my office from IPC." He contended that at no time did he assume liability or responsibility for GAG's obligation to IPC and noted that the checks sent from GAG to IPC were not signed by him. When asked whether, after receiving quotes, he contacted IPC to advise it to change the account because GAG was incorporated, Crowley replied, "I do not know" and claimed he had not seen the quotes. Additionally, he conceded that while some of the firm's business agents' cards indicated the Gregroy Group's status as a corporation, others did not, admitting that "[w]e had three or four business cards over the period of the last several years." When questioned specifically about his present business card, he stated he was unsure, even at that time, whether his card reflected GAG's corporate status.
The trial court filed written reasons for judgment, in pertinent part, stating:
The Court reviewed the case of Prevost v. Gomez, 251 So.2d 470 (La.App. 1 Cir. 1971). In that case the trial court dismissed one of the defendants because, "It was admitted by the plaintiff during the course of the trial that he never had any dealings whatsoever with the other defendant, J.W. Bryant, Sr. and, in fact, does not even know him." Mr. Doucet testified that other than meeting Mr. Crowley once when he went to meet Mr. Smith for lunch, he had no dealings with Mr. Crowley.
After due consideration, the Court is not persuaded from the evidence presented that the plaintiff has carried its burden of proving a compensable claim for recovery against this defendant. Accordingly, the plaintiff's suit will be involuntarily dismissed at its cost.
Prevost was also a suit on an open account. Two defendants were alleged to be doing business as "Cookie's Auto Sales." However, the defendants, Roland A. "Cookie" Gomez and J.W. Bryant, Sr., actually owned all the corporate stock of "Cookie's Auto Sales, Inc." The plaintiff alleged Gomez personally incurred the open account indebtedness sued upon and failed to disclose the corporate entity when the business relationship was established. Gomez claimed his dealings with the assignor of the account sued upon were not in his individual capacity, but rather in his capacity as agent for Cookie's Auto Sales, Inc. Gomez proved his business stationary, checks, invoices, auto sales forms, retail buyers orders, state employment security account, and newspaper advertisements were in the name of "Cookie's Auto Sales, Inc.," but did not prove the plaintiff ever saw any of these items. Prevost, 251 So.2d at 473. This Court held, "It was admitted by the plaintiff during the course of the trial that he never had any dealings whatsoever with the other defendant, J.W. Bryant, Sr., and, in fact, does not even know him. It is not seriously contended that there is any basis for assessing liability against Mr. Bryant and the Court certainly can see no such basis." Prevost, 251 So.2d at 471. However, this Court reversed dismissal of suit against Gomez, holding he had failed to satisfy the duty of an agent to disclose his agency status and the identity of his principal in order to avoid personal liability for contracts made by him.[1]
*72 Contrary to the trial court's reasoning, we find Crowley's role in the instant case is not analogous to Bryant's role in Prevost. Here, Crowley made Smith vice-president and authorized him to contract on behalf of GAG, Inc. Smith contracted with IPC, identifying himself as an agent of GAG, and identifying Crowley as the owner of GAG. Smith failed to disclose that GAG was a corporation, however, and there was insufficient proof of Doucet's knowledge of sufficient indicia of the agency relationship as to have put him on notice that Smith (and Crowley) were acting on behalf of a corporate entity. See J.T. Doiron, Inc. v. Lundin, 385 So.2d 450, 453 (La.App. 1st Cir.1980). Crowley personally communicated with Doucet on at least three occasions in reference to IPC's work for GAG and Crowley and failed to advise Doucet that GAG was incorporated. Instead, Crowley and Smith caused IPC to believe that Smith was his mandatary, and IPC contracted with Smith in good faith. According to Doucet, he never learned that Crowley was seeking to avoid liability for the unpaid balances on the basis of doing business solely in a corporate status until shortly before trial, when Doucet's attorney informed him of the defense being interposed by Crowley. Considering the record herein, we find Crowley is bound to IPC. See LSA-C.C. art. 3021.
For the foregoing reasons, the April 6, 2000 judgment of the Baton Rouge City Court hereby is reversed and judgment hereby is rendered in favor of IPC and against Crowley for the sum of $15,333.46 together with legal interest thereon from date of judicial demand until paid, reasonable attorney fees, and for all costs, including appellate costs. The case is remanded to the Baton Rouge City Court for the determination of reasonable attorney fees, pursuant to LSA-R.S. 9:2781 (prior to amendment by 2001 La. Acts No. 1075, § 1).
REVERSED AND RENDERED IN PART; REMANDED IN PART WITH INSTRUCTIONS.
NOTES
[1] This Court referenced the codal basis for this duty as LSA-C.C. arts. 3012 & 3013 (prior to revision by 1997 La. Acts No. 261, § 1). Prevost, 251 So.2d at 473. See now LSA-C.C. arts. 3016, 3017, & 3019.