984 So.2d 827 (2008)
WALTON CONSTRUCTION COMPANY, L.L.C.
v.
G.M. HORNE & COMPANY, INC. and Centria.
No. 2007 CA 0145.
Court of Appeal of Louisiana, First Circuit.
February 20, 2008.
*829 Denise C. Puente, Susan F. Clade, Charles E. Riley, IV, Simon, Peragine, Smith & Redfearn, L.L.P., New Orleans, LA, for Plaintiff-Appellant Walton Construction Co., LLC.
Michael R. Fontham, John Mark Fezio, Stone, Pigman, Walther, & Wittmann, L.L.C., New Orleans, LA, for Defendant-Appellee Centria.
Before PARRO, KUHN, and DOWNING, JJ.
PARRO, J.
The plaintiff appeals a judgment by the trial court that sustained a peremptory exception raising the objections of no cause of action and prescription and dismissed its claims against one of the defendants. For the following reasons, we affirm in part, reverse in part, render in part, and remand with instructions.

Factual Background and Procedural History
On December 28, 2005, Walton Construction Company, L.L.C. (Walton) filed a suit for damages against G.M. Home and Company, Inc. (Horne) and Centria in connection with a contract for building materials that were provided for a construction project. In its petition, Walton alleged that it was the general contractor for the addition of a women's center to Terrebonne General Medical Center. In connection with this project, it entered into an agreement with Horne for the purchase of factory-assembled metal wall panels with an integrated window system and metal profile soffit panels to be used in the construction project. Those materials were obtained by Horne from Centria. Horne was Centria's exclusive distributor in the southeast Louisiana area.
Walton further alleged that Horne and Centria were provided with a copy of the construction schedule and the plans and specifications for the project, as well as updates to the schedule and change orders. According to the petition, Horne *830 and Centria failed to deliver panels as required by the construction schedule and the purchase agreement. Subsequently, Horne and Centria allegedly refused to release the remaining materials that were needed to complete the project, requiring Walton to obtain the needed materials from a third party at a cost of $41,137.60 and to hire outside labor costing approximately $15,000 to install these components. Additionally, Walton alleged that Horne and Centria refused to release certain documentation, such as written warranties for the materials, needed for Walton to close out the project. Regarding Centria, Walton charged that Centria was negligent by failing to deliver the panels to the construction site in a timely manner or in a proper sequence, causing damages to Walton. Walton further asserted that its damages were continual because of Centria's refusal to release the remaining panels and close-out documentation.
Centria filed an exception pleading the objection of no cause of action, urging that in the absence of a contractual relationship between them, it owed no legally cognizable duty to Walton. Walton responded by filing a motion for leave of court to amend its petition, which was granted by the trial court. In its first supplemental and amending petition filed on May 18, 2006, Walton alleged that it relied to its detriment on Centria's promises to manufacture and supply the proper building materials at the proper times. (r 39)
At a hearing on Centria's exception, the trial court found that Walton had not stated a cause of action against Centria in contract or in tort, as the law does not require a party to make deliveries in a timely manner or in a proper sequence to someone with which it has no contract. Before entering a judgment on Centria's exception, the trial court afforded Walton an opportunity to amend its petition, (r1) Walton responded by filing a second supplemental and amending petition on June 9, 2006, to assert a claim against Centria for the delivery of defective goods beginning with the first shipment. (r63) Walton further asserted that on or about June 30, 2005, July 19, 2005, July 29, 2005, August 9, 2005, and October 28, 2005, it entered into various purchase agreements/contracts with Centria for the purchase and delivery of building materials and supplies, costing $32,000 to replace defective materials and supplies that had been previously delivered to the construction site. According to Walton, these purchase agreements/contracts were breached by Centria because Walton had to pay for the same materials twice, rather than Centria simply replacing the defective items. (r64-65) In particular, Walton alleged that "[e]ven though the manufacture and first shipment of the building materials and supplies by Centria to the [construction] site were defective, Centria refused to replace these items with non-defective building materials and supplies, causing Walton to `re-order' these items on the [previously] stated dates, in fact paying Centria twice for the same building materials and supplies in order to keep the [construction] project on track." (r65) Notably, the petition does not contain any allegation that the reorder contracts were breached. Instead, the allegations refer to a "breach" that occurred based on Centria's alleged failure to replace the defective building materials and supplies, without costs, with respect to the prior deliveries.
Again, Centria objected on the ground that Walton had failed to state a cause of action. (r68) Centria also raised an objection of prescription in connection with Walton's attempt to assert a claim in redhibition in its second supplemental and amending petition. Centria alleged that the delivery of the defective products in question occurred in January 2005 at the *831 latest. Following a hearing, both objections were sustained, and Walton's claims against Centria were dismissed. (r96) Walton appeals, contending that the trial court erred in sustaining Centria's objections and dismissing its claims against Centria.

Prescription
Centria maintains that the objection of prescription was correctly sustained because Walton's redhibition claim, if any such claim was properly asserted by Walton, constituted a completely distinct and separate cause of action from the other claims set forth in Walton's original and first supplemental and amending petitions and, therefore, pursuant to LSA-C.C.P. art. 1153, did not relate back to the filing of the original petition so as to interrupt the running of prescription. The original suit against Horne and Centria for delay damages was filed on December 28, 2005. According to the original petition, Walton entered into a purchase agreement with Horne on or about April 5, 2004. Walton alleged for the first time in its June 9, 2006 second supplemental filing that Centria's products, delivered in its first shipment to the construction site, were defective, requiring the placement of reorders directly with Centria on June 30, 2005, July 19, 2005, July 29, 2005, August 9, 2005, and October 28, 2005, and causing delay damages totaling over $661,000.[1] (r64) In its second supplemental and amending petition, Walton asserted that Centria had actual knowledge of the defects in the building materials and supplies.
Louisiana Civil Code article 2534 provides in pertinent part:
A. (1) The action for redhibition against a seller who did not know of the existence of a defect in the thing sold prescribes in four years from the day delivery of such thing was made to the buyer or one year from the day the defect was discovered by the buyer, whichever occurs first.
* * *
B. The action for redhibition against a seller who knew, or is presumed to have known, of the existence of a defect in the thing sold prescribes in one year from the day the defect was discovered by the buyer.
Under the alleged facts of this case, the prescriptive period for a redhibitory action is one year under LSA-C.C. art. 2534. The face of Walton's second amending and supplemental petition does not disclose when the allegedly defective items were received by Walton or when the defects were discovered by Walton. Therefore, we are unable to find that prescription has tolled on the face of Walton's petition, as amended and supplemented. Accordingly, Centria, as the party pleading prescription, had the burden of proving that prescription had tolled on Walton's claim in redhibition. See Gustin v. Shows, 377 So.2d 1325, 1328 (La.App. 1st Cir.1979).
No competent evidence was offered by either party at the trial of this exception, although affidavits were submitted by Centria and Walton along with their supporting memoranda. Since these affidavits were hearsay, they were inadmissible in connection with the trial of the objection of prescription as LSA-C.C.P. art. 931 requires *832 the introduction of competent legal evidence. See Board of Com'rs of Port of New Orleans v. Louisiana Com'n on Ethics for Public Employees, 416 So.2d 231, 238 (La.App. 1st Cir.), writ denied, 421 So.2d 248 (La.1982). Accordingly, we find that Centria failed to satisfy its burden of proof in connection with its objection of prescription.[2]

No Cause of Action
A cause of action, for purposes of the peremptory exception, is defined as the operative facts that give rise to the plaintiff's right to judicially assert the action against the defendant. Ramey v. DeCaire, 03-1299 (La.3/19/04), 869 So.2d 114, 118. The function of the exception of no cause of action is to test the legal sufficiency of the petition by determining whether the law affords a remedy on the facts alleged in the petition. Id.
The burden of demonstrating that no cause of action has been stated is on the party filing the exception. Adams v. Owens-Corning Fiberglas Corp., 04-1296 (La.App. 1st Cir.9/23/05), 921 So.2d 972, 975, writ denied, 05-2501 (La.4/17/06), 926 So.2d 514. Generally, no evidence may be introduced to support or controvert the exception raising the objection of no cause of action. See LSA-C.C.P. art. 931; Ramey, 869 So.2d at 118. For the purpose of determining the issues raised by the exception, all facts pied in the petition must be accepted as true. Id. However, conclusions of law asserted as facts are not considered well-pled allegations of fact. First Natchez Bank v. Malarcher-Damare Co., Ltd., 135 La. 295, 65 So. 270, 272 (1914); Kyle v. Civil Service Commission, 588 So.2d 1154, 1159 (La.App. 1st Cir. 1991), writ denied, 595 So.2d 654 (La. 1992). If the petition alleges sufficient facts to establish a cause of action cognizable in law, the exception raising the objection of no cause of action must fail. Rebardi v. Crewboats, Inc., 04-0641 (La.App. 1st Cir.2/11/05), 906 So.2d 455, 457. If two or more causes of action are based on separate and distinct operative facts, partial grants of the exception of no cause of action may be rendered, while preserving other causes of action. Plaquemine Marine, Inc. v. Mercury Marine, 03-1036 (La.App. 1st Cir.7/25/03), 859 So.2d 110, 115-16. Any reasonable doubt concerning the sufficiency of the petition must be resolved in favor of finding that a cause of action has been stated. Belle Pass Terminal, Inc. v. Jolin, Inc., 92-1544, 92-1545 (La.App. 1st Cir.3/11/94), 634 So.2d 466, 493, writ denied, 94-0906 (La.6/17/94), 638 So.2d 1094. Appellate courts review a judgment sustaining a peremptory exception raising the objection of no cause of action de novo, because the exception raises a question of law, and the trial court's decision is based only on the sufficiency of the petition. Ramey, 869 So.2d at 119.
Walton argues that its petition alleges facts that support several cognizable causes of action under Louisiana law. In its original petition, Walton did not allege that it had a contractual relationship with Centria. Instead, it was Walton and Horne that allegedly had a contractual relationship. According to Walton's allegations, Horne's ability to fulfill its contractual obligations with Walton was dependent on Centria, which supplied Horne with the needed materials and products. In the absence of a direct contractual relationship with Centria, Walton sought to hold Centria accountable for the role that Centria, as Horne's supplier, played in Walton's inability to meet the time requirements of its general contract with the hospital. Walton initially premised its cause of action against Centria on *833 negligence in failing and/or refusing to deliver the materials timely.
We recognize that liability may lie even where there exists no contractual duty.[3] However, in order to maintain a tort cause of action against Centria, Walton must allege facts that establish all of the elements of a tort claim in Louisiana, that is, (1) the conduct in question was the cause-in-fact of the resulting harm, (2) the defendant owed a duty of care to the plaintiff, (3) the requisite duty was breached by the defendant, and (4) the risk of harm was within the scope of protection afforded by the duty breached. See Posecai v. Wal-Mart Stores, Inc., 99-1222 (La.11/30/99), 752 So.2d 762, 765.
As noted by Centria, based on the alleged facts raised in the petition, no legal duty is owed by Centria to Walton. Furthermore, based on the facts alleged in Walton's petition, we are unable to find that Walton has set forth a tort cause of action against Centria resulting from an alleged breach by Horne of the contract between Walton and Horne. The underlying facts in the cases relied on by Walton are clearly distinguishable from the facts alleged by Walton in this case. The damages claimed by Walton relate to a purported breach of the terms of its contract with Horne, which allegedly required the timely delivery of materials and products in accordance with a schedule that formed a part of the purchase agreement between Walton and Horne, not to independent acts of negligence that caused non-contractual injury to a third party,[4] or to the failure to perform an independent professional duty with the appropriate level of care,[5] or to damages caused by defective work when all of the elements for delictual recovery are present.[6]
In its first supplemental and amending petition, Walton alleged that "Walton relied on to its detriment Centria's promises to manufacture and supply the proper building materials at the proper times, thus forcing Walton to contract with different suppliers and hire additional laborers, which in turn caused Walton significant delay damages." (r39) On appeal, Walton does not challenge the trial court's dismissal of any such claim. Therefore, we consider it to have been abandoned.
In its second supplemental and amending petition, Walton indicated that it had entered into contracts or purchase agreements with Centria on five specified dates for building materials and supplies totaling over $32,000. According to Walton, the referenced contracts were reorders for materials and supplies needed to replace unusable defective building materials and supplies that were manufactured and supplied previously by Centria to Walton.[7] Although it alleged a contractual relationship with Centria with respect to the later purchases, Walton did not set forth facts to support a breach of any such *834 contracts by Centria. Instead, it focused on Centria's actions in connection with the prior deliveries through Horne and sought $32,117.72 in damages for the costs to replace the defective materials. Accordingly, we find that Walton has once again failed to set forth a cause of action against Centria for breach of contract.
In light of its ruling on Centria's objection of prescription, the trial court seemingly did not address whether Walton had stated a cause of action against Centria in redhibition. Considering our reversal of the trial court's determination relative to prescription, we find it necessary to consider whether such a cause of action was stated by Walton.
Redhibition is the avoidance of a sale on account of some vice or defect in the thing sold which renders it either absolutely useless, or its use so inconvenient and imperfect, that it must be supposed that the buyer would not have purchased it, had he known of the vice. LSA-C.C. art. 2520. A buyer may bring an action against all sellers in the chain of sales back to the primary manufacturer to rescind the sale for breach of an implied warranty. Jackson v. Slidell Nissan, 96-1017 (La.App. 1st Cir.5/9/97), 693 So.2d 1257, 1261-62. In a suit for redhibition, the plaintiff must prove: 1) the seller sold the thing to him and it is either absolutely useless for its intended purpose or its use is so inconvenient or imperfect that had he known of the defect, he would never have purchased it; 2) the thing contained a non-apparent, or latent, defect at the time of sale;[8] and 3) the seller was given an opportunity to repair the defect. Id. at 1262. Clearly, the fact that the materials may have been defective does not automatically give rise to a cause of action for redhibition.
With respect to the materials in question, Walton stated that (1) materials and supplies that had been manufactured and supplied by Centria could not be used because of their defective condition, (2) Centria, as the manufacturer of the items, is presumed to know of the defects and/or had actual knowledge of the defects, (3) Centria was notified as to the defective condition of the subject building material and supplies within a reasonable time after the defects were discovered, (4) Centria refused to replace these items with non-defective materials and supplies, and (5) Walton incurred costs in having to reorder these materials and supplies from Centria to keep the project on track. Absent from Walton's petition, as amended, is an allegation of a latent defect in the product. In a suit for redhibition, Walton must prove the thing contained a non-apparent, or latent, defect at the time of sale. In the absence of an allegation relating to this element of Walton's claim, we conclude that Walton has failed to allege sufficient facts to state a cause of action for redhibition.
On appeal, Walton contends for the first time that its petition, as amended, alleges facts sufficient to support a claim under the doctrine of apparent authority. It *835 maintains that the following statement of fact is pertinent to such a cause of action: Horne was the lone and exclusive distributor for Centria's products in this region. Walton contends that under the doctrine of apparent authority, Home, as a distributor, may be an agent of the manufacturer/seller, Centria, of the products it distributes, citing Reeves v. Celestron, Inc., 473 So.2d 397 (La.App. 3rd Cir.), writ not considered, 477 So.2d 698 (La.1985).[9] In making this argument, Walton implies that Horne, as Centria's agent, had apparent authority to bind Centria to the purchase agreement that Horne executed with Walton, such that Centria would be liable for the acts and/or omissions of Horne.
In the past, Louisiana courts jurisprudentially recognized the common law doctrine of apparent authority. See Glenn G. Morris & Wendell H. Holmes, Business Organizations § 33.08 at 125, in 8 Louisiana Civil Law Treatise (1999). Apparent authority is a doctrine by which an agent is empowered to bind his principal in a transaction with a third person when the principal has made a manifestation to the third person, or to the community of which the third person is a member, that the agent is authorized to engage in the particular transaction, although the principal has not actually delegated this authority to the agent. Tedesco v. Gentry Dev., Inc., 540 So.2d 960, 963 (La.1989). Apparent authority operates only when it is reasonable for the third person to believe the agent is authorized and the third person actually believes this. Id.
In 1997,[10] the legislature enacted LSA-C.C. art. 3021 to specifically address the liability of a principal that arises out of his agent's purporting to act on the principal's behalf. See Morris & Holmes, Business Organizations § 33.08 at 125, in 8 Louisiana Civil Law Treatise. Article 3021 provides:[11]
One who causes a third person to believe that another person is his mandatary is bound to the third person who in good faith, contracts with the putative mandatary.
Article 3021 calls the apparent agent a "putative mandatary." See Morris & Holmes, Business Organizations § 33.08 at 126 n. 13, in 8 Louisiana Civil Law Treatise. Prior to this enactment, the Louisiana Civil Code did not recognize the doctrine of apparent authority. See Id. at 126.
*836 Unlike the pre-Article 3021 jurisprudence, Article 3021 does not say that the third party's belief in the putative mandatary or apparent agent's authority must be "reasonable," but only that he must contract "in good faith" with the putative mandatary or apparent agent. Morris & Holmes, Business Organizations § 33.08 at 21 n. 13 (2007 pocket part). The term "good faith" is not defined in the mandate articles; however, Revision Comment (a) of LSA-C.C. art. 2814 suggests that the drafters intended the phrase to mean "without knowledge or reason to know of the limitation of authority." See Morris & Holmes, Business Organizations § 2.14 at 89, in 7 Louisiana Civil Law Treatise (1999). Thus, it is not clear whether the new putative mandatary provision, which requires that the third party be in "good faith" is intended to permit recoveries by third parties who acted unreasonably, but in good faith. In general, however, when the term "good faith" is used to describe third parties entitled to protection, the Louisiana Civil Code comments usually indicate that the term means "without knowledge or notice" of the relevant facts. Id. at 89 n. 15.
Nonetheless, the courts, in post-Article 3021 cases, have continued to apply the old jurisprudence and do not treat this difference in language as a change in the law. Morris & Holmes, Business Organizations § 33.08 at 126 n. 13, in 8 Louisiana Civil Law Treatise (2007 pocket part). See Tresch v. Kilgore, 03-0035 (La.App. 1st Cir.11/7/03), 868 So.2d 91, 94-96; see also Instant Print Centers, Inc. v. Crowley, 01-0336 (La.App. 1st Cir.3/28/02), 814 So.2d 69, 72; Venable v. U.S. Fire Ins. Co., 02-505 (La.App. 3rd Cir.10/30/02), 829 So.2d 1179, 1182; Bamburg Steel Buildings, Inc. v. Lawrence General Corp., 36,005 (La. App. 2nd Cir.5/8/02), 817 So.2d 427, 432.
In Tresch, this court, without deciding whether Act 261 of 1997 amended or simply restated judicial interpretation of the principles of apparent authority,[12] concluded that the pre-Article 3021 judicial understanding of the principles of apparent authority appeared to be analogous to the concept of putative mandatary set forth in Article 3021. See Tresch, 868 So.2d at 94-95. In accordance with its conclusion, this court applied the pre-Article 3021 jurisprudence on the doctrine of apparent authority. See Id. at 95. An agency relationship is never presumed. Id. The burden of proving a putative mandatary relationship is on the party seeking to bind the principal. Id. In order for the third person to prove a putative mandatary relationship, there must be some manifestations from the principal for the third person to be put on notice that the mandatary is acting on the principal's behalf. Id.
Centria correctly notes that Walton never alleged in its petition, as amended, that Horne had authority to bind Centria to the contracts in question or that Walton believed that it was contracting with Centria at that time. It simply alleged that Horne was the exclusive distributor for Centria products in the area. Distributorship does not equate to agency or mandate, and it does not convey authority to the distributor to act on behalf of the manufacturer. See Gray Towing Co. v. Hayes-Sammons Chemical Co., 170 So.2d 880, 881-82 (La.App. 4th Cir.1965). Walton did not allege that Centria made any manifestations to cause Walton to be put on notice that Horne was acting on Centria's behalf when they entered into the purchase agreements. Nor did Walton allege that Horne represented that it was *837 acting on Centria's behalf in its dealings with Walton. To the contrary, Walton alleged that the purchase agreements in question were between Walton and Horne, and admittedly, Centria had refused to sell directly to Walton since there was a distributor in the region. Based on our review of Walton's petition, as amended, we conclude that Walton has failed to set forth sufficient facts to support a cause of action under the law of mandate.

Opportunity to Amend
When the grounds of the objection pleaded by the peremptory exception may be removed by amendment of the petition, the judgment sustaining the exception shall order such amendment within the delay allowed by the court. If the grounds of the objection cannot be so removed, the action shall be dismissed. LSA-C.C.P. art. 934. This is true of any objection raised by the peremptory exception, including no cause of action. Adams, 921 So.2d at 976.
Based on the facts currently in Walton's petition, as supplemented and/or amended, we believe the trial court properly sustained the objection of no cause of action as to Walton's claims asserted in its original petition and two supplemental and amending petitions, with the exception of the possible claim for redhibition. Relative to any redhibition claim that Walton may have against Centria, we conclude that Walton should be afforded an opportunity to amend its petition one last time to state a cause of action for redhibition, if possible. See LSA-C.C.P. arts. 934 and 1673.

Decree
For the foregoing reasons, we affirm that portion of the trial court judgment sustaining Centria's exception raising the objection of failure to state a cause of action as to negligence or breach of contract. That portion of the trial court judgment sustaining the peremptory exception raising the objection of prescription as to redhibition is reversed. Furthermore, judgment is rendered sustaining Centria's peremptory exception raising the objection of no cause of action as to redhibition. However, we remand to allow Walton the opportunity to amend its petition to assert, if possible, facts sufficient to support a cause of action in redhibition that it may have against Centria; provided that such an amendment must be filed within 15 days from the date that this opinion becomes final, in default of which, Walton's petition against Centria may be dismissed by the trial court with prejudice. Costs of this appeal are assessed to Walton Construction Company, L.L.C.
AFFIRMED IN PART, REVERSED IN PART, RENDERED IN PART, AND REMANDED WITH INSTRUCTIONS.
DOWNING, J., concurs and assigns reasons.
DOWNING, J., concurs with reasons.
A reading of the second amending petition paragraph 30, suggests that Centria, the manufacturer, and Horne, the distributor, contracted together for the benefit of Walton Construction using the plans and specifications furnished by Walton.
The majority recognizes that for "latent" defects a buyer may bring an action against all sellers in the chain . . . back to the manufacturer. The majority, however, fails to apply that rule to non-latent defects pursuant to LSA-C.C. arts. 2489, 2524 and 2529.
Louisiana Civil Code article 2524 was apparently passed because lawyers confused the warranty of fitness with non-apparent defects. For example, if I ordered a table that arrived missing a leg, that is not a redhibition case because the *838 defect is apparent. I still do not have to pay for the table because it contains a defect which renders it unfit for ordinary use. The Civil Code uses apparent defects, for which you cannot recover, i.e. if I buy a car with dents I can't later complain about the dents. This is different from being shipped a product which is broken upon arrival.
Walton's attorney in brief alleges redhibition, where he should have been arguing Civil Code articles 2489 and 2524. He does, however, on pg. 84 in bold in the middle of the page, state, "Clearly, a cause of action for breach of contract exists in this matter." I believe he is correct.
The La. Supreme Court in State v. Simoni, Heck & Associates, 331 So.2d 478, 483 (La.1976) recognized the same principle for Civil Code article 2489, non-latent defects, that the majority recognized in Jackson v. Slidell Nissan, 96-1017 (La.App. 1 Cir.5/9/97), 693 So.2d 1257. See also Weathermaster's Parts & Service, Inc. v. McCay, 242 So.2d 306 (La.App. 4 Cir. 1971). The warranty of fitness which, by law, comes with my air-conditioner, doesn't just run to the guy who bought it to install it, it runs to me, the ultimate consumer, for which it was intended. This allows me, the ultimate consumer, to sue the manufacturer without also suing the (probably broke and long gone) contractor, distributor, or middle man.
I do believe that a cause of action has been stated.
Furthermore, although affidavits are not admissible at a trial on prescription if objected to, unobjected to affidavits can be used in a trial on prescription. Walton's attorney does not raise the inadmissibility of the affidavits and we cannot supply the objection.
NOTES
[1] Based on the total of these alleged delay damages that resulted from an accrual rate of $1,500 per day, Centria contends Walton had allegedly incurred approximately 440 days of delay damages due to the defective products before it filed its original petition on December 28, 2005. Accordingly, Centria argues Walton's redhibition claims had prescribed before it filed its original petition. However, since Centria's argument relating to the cause of the delay damages is predicated on contradictory allegations contained on the face of Walton's petitions, we find no merit in its argument.
[2] In light of this conclusion, we pretermit discussion of the relation back issue.
[3] See Marine Insurance Co. v. Strecker, 234 La. 522, 100 So.2d 493, 494 (1958); Gurtler, Hebert and Company, Inc. v. Weyland Machine Shop, Inc., 405 So.2d 660 (La.App. 4th Cir. 1981), writ denied, 410 So.2d 1130 (La. 1982); American Fidelity Fire Insurance Co. v. Pavia-Byrne Engineering Corp., 393 So.2d 830 (La. App. 2nd Cir.), writ denied, 397 So.2d 1362 (La.1981).
[4] See Marine Insurance Co., 100 So.2d at 497-98.
[5] See Gurtler, Hebert and Company, Inc., 405 So.2d at 662-63; American Fidelity Fire Insurance Co., 393 So.2d at 837-38.
[6] See Impressive Builders, Inc. v. Ready Mix, Inc., 535 So.2d 1344, 1346 (La.App. 5th Cir. 1988); Lumber Products, Inc. v. Hiriart, 255 So.2d 783, 787 (La.App. 4th Cir.1971).
[7] These building materials and supplies were obviously supplied through Horne.
[8] In Louisiana, sellers are bound by an implied warranty that the thing sold is free of hidden defects and is reasonably fit for the buyer's intended use. Young v. Ford Motor Co., Inc., 595 So.2d 1123, 1126 (La.1992). LSA-C.C. art. 2521 provides that apparent defects are those defects which the buyer might have discovered by simple inspection and that apparent defects are not among the number of redhibitory vices. Hidden defects are those which cannot be discovered by simple inspection. Morrison v. Allstar Dodge Inc., 00-0398 (La.App. 1st Cir.5/11/01), 792 So.2d 9, 14, writ denied, 01-2129 (La.11/2/01), 800 So.2d 878. To determine whether a defect is apparent upon simple inspection, the courts have questioned whether a reasonably prudent buyer acting under similar circumstances would have discovered the presence of the defect. Id.
[9] In Reeves, the manufacturer was liable for specific performance or return of the purchase price to the person who bought its product from a distributor who filed for bankruptcy before delivery occurred. The basis for the imposition of liability was that the distributor had apparent authority to act for the manufacturer in selling the product. See Reeves, 473 So.2d at 399.
[10] See 1997 La. Acts, No. 261, § 1, effective January 1, 1998.
[11] A mandate is a contract by which a person, the principal, confers authority on another person, the mandatary, to transact one or more affairs for the principal. LSA-C.C. art. 2989. The contract of mandate is not required to be in any particular form. Nevertheless, when the law prescribes a certain form for an act, a mandate authorizing the act must be in that form. LSA-C.C. art. 2993. The principal may confer on the mandatary general authority to do whatever is appropriate under the circumstances. LSA-C.C. art. 2994. The mandatary may perform all acts that are incidental to or necessary for the performance of the mandate. The authority granted to a mandatary to perform an act that is an ordinary part of his profession or calling, or an act that follows from the nature of his profession or calling, need not be specified. LSA-C.C. art. 2995. A mandatary who exceeds his authority is personally bound to the third person with whom he contracts, unless that person knew at the time the contract was made that the mandatary had exceeded his authority or unless the principal ratifies the contract. LSA-C.C. art. 3019.
[12] Tresch, 868 So.2d at 95 n. 2.