KUHN, J.,
dissenting.
hi disagree with the majority’s reversals of the trial court’s actions of: (1) sustaining a peremptory exception of prescription filed by 5-Z Investments, Inc. (5-Z) and dismissing the redhibition claim filed by MGD Partners, LLC (MGD); and (2) granting summary judgment in favor of 5-Z in a deficiency judgment action against MGD sureties finding that because MGD might prevail on its redhibition claim, genuine issues of material fact preclude judgment.
In its petition averring entitlement to relief as a result of a redhibitory defect, MGD alleged that at the time of the purchase from 5-Z, it intended to use the property for residential development. And at the trial of the peremptory exception raising the objection of prescription, MGD urged that when the property was sold, it was for the purpose of residential development. Indeed, the entire basis of the redhibition claim according to MGD’s petition is that the property it acquired was not suited for its intended purpose, i.e., residential development. But at the hearing on the motion for new trial and now on appeal, MGD maintains, and the majority apparently agrees, that the determination of whether the defect is of residential or commercial property for purposes of prescription under La. C.C. art. 2534 should be based on simply viewing the property at the time of delivery, thereby creating as a new legal precept an “objective observation” of alleged defective property.
| ^Redhibition is the avoidance of a sale on account of some vice or defect in the thing sold which renders it either absolute *1062 ly useless, or its use so inconvenient and imperfect, that it must be supposed that the buyer would not have purchased it, had he known of the vice. La. C.C. art. 2520. In a suit for redhibition, the plaintiff must prove: (1) the seller sold the thing to him and it is either absolutely useless for its intended purpose or its use is so inconvenient or imperfect that had he known of the defect, he would never have purchased it; (2) the thing contained a non-apparent, or latent, defect at the time of sale; and (3) the seller was given an opportunity to repair the defect. Walton Constr. Co., L.L.C. v. G.M. Home & Co., Inc., 2007-0145 (La.App. 1st Cir.2/20/08), 984 So.2d 827, 834. In conjunction with proof that the thing contained a non-apparent (latent) defect at the time of sale, Louisiana courts recognize sellers are bound by an implied warranty that the thing sold is reasonably fit for the buyer’s intended use. See Walton Constr. Co., L.L.C., 984 So.2d at 834 n. 8 (citing Young v. Ford Motor Co., Inc., 595 So.2d 1123, 1126 (La.1992)); see also La. C.C. art. 2475; accord La. C.C. art.1967 (defining “cause” as “the reason why a party obligates himself’ and providing that “[a] party may be obligated by a promise when he knew or should have known that the promise would induce the other party to rely on it to his detriment and the other party was reasonable in so relying”).
The majority’s conclusion that since residential development of the property had not occurred as of the date of the sale, the proper basis for classifying the property, apparently as a matter of law, is an “objective observation” of the characteristics of the property at the time of the sale, turns a blind eye to the requirements necessary to support a claim for redhibition. It is well settled that the defectiveness of the thing sold is a factual determination to be made by the trier of fact, whose factual conclusions are not to be disturbed on appeal absent manifest | .¡error. See Arceneaux v. Domingue, 365 So.2d 1330, 1333-34 (La.1978). In order to reach the conclusion that a thing sold is “useless” or its “use” is inconvenient or imperfect under an application of the provisions of La. C.C. art. 2520, the trier of fact must necessarily determine the thing’s intended use, which is a factual finding subject to the manifest error/clearly wrong standard of review. The majority has simply ignored this well established standard of appellate review of a lower court’s judgment and judicially created new law in the process.
It is noteworthy that the majority does not expressly state that it is reversing the trial court for having committed a legal error, though having failed to review the evidence in the record to ascertain the basis for its “objective observation” of the characteristics of the property, it certainly has not undertaken a manifest error/clearly wrong review. The majority’s failure to articulate under which standard of review it has rendered its disposition undermines the importance of the Louisiana Rules of Court and the obligation the rules impose on practitioners. See La. Uniform Rules — Courts of Appeal, Rule 2-12.4A(9)(b) (requiring the appellant’s brief to contain a concise statement of the appropriate standard of review for each assignment of error and issue for review). In such instances, the nature of this court is no longer that of a Court of Appeal but becomés that of a legislature or creator of the law.
Based on the allegations of its petition, MGD seeks recovery for a redhibitory defect as a result of the seller’s breach of its obligation to ensure that the thing sold is fit for its intended use. See La. C.C. art. 2475 (“The seller is bound to deliver the thing sold and to warrant to the buyer ownership and peaceful possession of, and the absence of hidden defects in, that *1063 thing. The seller also warrants that the thing sold is fit for its intended use”). Thus, the factfinder’s determination of whether the property is residential or commercial in accordance |4with the intended use is consistent with the object of the lawsuit. To rule as the majority has done creates an incongruent situation where to prove his claim for redhibition a plaintiff must demonstrate the intended use of the property without being subjected to the legally imposed time limitations for that intended use. The majority has looked at “the thing,” ostensibly “objectively,” and found it to be “unimproved, unzoned, undeveloped raw pasture and woodland.” But without knowing of the intended use of the undeveloped property, where is the defect? The majority has expressly defined the defect as “that the property is actually part of a former bombing and gunnery site wholly unable to be used as a residential development without remediation, if at all.” (Emphasis added.)
The very basis for any entitlement to the relief MGD seeks is the incompatibility of the undeveloped land with MGD’s intent to use that land as a residential development. It is properly the role of the legislature to determine the length of prescriptive periods and not that of judicially active courts, even if judges do not agree with the clearly written law.
A trial court’s determination of whether the property is residential or commercial based on the intended use of the immovable property at the time of delivery, read in pari materia with La. C.C. arts. 2475 and 2520 for purposes of an application of La. C.C. art. 2534, is proper and consistent with the object of MGD’s lawsuit. Accord La. C.C. art. 1967. Specifically, La. C.C. art. 2520 defines a redhibitory defect as one that “renders [a] thing useless, or its use so inconvenient that it must be presumed that a buyer would not have bought the thing had he known of the defect.” The jurisprudence has included as elements of a plaintiffs claim for redhibitory relief proof that the seller sold the thing to him and it is either absolutely useless for its intended purpose; or its use so inconvenient/imperfect it may be presumed he would not have purchased the thing | fihad he known of the defect. And the jurisprudence has recognized the concomitant obligation of the seller to warrant that the thing containing that non-apparent defect is reasonably fit for the buyer’s intended use. See Walton Constr. Co., L.L.C., 984 So.2d at 834.
Moreover, assuming arguendo that the determination of whether the property is residential or commercial for purposes of applying La. C.C. art. 2534 is one that should be based on the characteristics of the immovable at the time of the sale rather than its intended use in confecting that sale, the evidence actually admitted at the hearing of the exception of prescription should not be disregarded under the guise of an “objective observation” of the thing that is subject of the redhibition claim. The evidence admitted at the hearing about the characteristics of the immovable property prior to the sale without regard to the buyer’s intended use actually supports a finding that the defect was of commercial immovable property.
Clarence Zahn, one of the five Zahn brothers, stated that for many years (somewhere between 25 and 40), the property had been used as a dairy farm. He and his brothers acquired it from the dairy farmers for the purpose of growing timber as an investment. Thus, the only evidence showing the characteristics of the property at the time of the sale was that it was commercial. As such, under La. C.C. art. 2534A(2), the redhibitory claim of the defect of commercial property prescribed one year from the day of delivery of the prop *1064 erty. And although it may be suggested that looking at evidence of the use the seller made of the property in classifying it for purposes of application of the correct prescriptive period is inequitable because it overlooks the buyer’s intended future use, the majority has concluded that the thing’s classification is an objective one for which the buyer’s intended use is “irrelevant.”
| (¡Finally on this point, one may inquire how a person can look at an immovable and determine whether it is or is not residential or commercial merely by objectively observing it. A person can certainly choose to purchase what appears to a casual observer “unimproved, unzoned, undeveloped raw pasture and woodland” with a full intent of “flipping it” and taking advantage of tax consequences for the acquisition inasmuch as the owner deems the immovable property commercial in purpose. Likewise, woodland can readily yield timber and easily be considered a commercial enterprise by the owner. According to the majority’s reasoning, the owners’ decisions to treat each acquisition as commercial are incorrect as a matter of law. Similarly, a buyer may choose to purchase a house that is in dilapidated condition with the intent of demolishing it and using it for unimproved farm land. When it is discovered that it was part of a former bombing range (or burial site or medical waste disposal), is the purchaser relegated to the one-year prescriptive period of La. C.C. art. 2534A(2) because, at the time of the sale, an “objective observation” convinced the observer that it was a house and, therefore, residential?
Addressing the merits of this appeal, in support of the peremptory exception raising the objection of prescription, evidence was introduced. When evidence is so introduced, the trial court’s findings of fact are subject to the manifest error-clearly wrong standard of review. Carter v. Haygood, 2004-0646 (La.1/19/05), 892 So.2d 1261, 1267. Under this standard, if the trial court’s findings are reasonable in light of the record reviewed in its entirety, an appellate court may not reverse even though convinced that had it been sitting as the trier of fact, it would have weighed the evidence differently. Stobart v. State, through Dep’t of Transp. and Dev., 617 So.2d 880, 882-83 (La.1993).
|7At the hearing on the exception of prescription, Carson Davis, a member of MGD and the real estate agent under contract with 5-Z who sold the property for 5-Z to MGD, testified. Among other things, Davis stated that after Hurricane Katrina, he was looking for a tract of land for residential purposes and called Zahn, who Davis believed was a representative of 5-Z, to see if the tract 5-Z owned on Highway 445 was available for sale. According to Davis, after the sale, but prior to his discovery that the property had been within the parameters of the Hammond Bombing and Gunnery Range and the discontinuance of the issuance of building permits by the parish, MGD had been working to put in the infrastructure. Davis stated that MGD had pre-sold fifty lots at $2,500,000.00. This testimony constitutes a reasonable factual basis to support the trial court’s determination that the property had been purchased for the intended use of developing it for residential purposes and, therefore, that the defect was of residential immovable property-[1]
Additionally, a reasonable factual basis exists to support the trial court’s finding *1065 that 5-Z was unaware of the defect at the time of the sale and, therefore, was in good faith. Davis testified that at a meeting in Baton Rouge with the U.S. Army Corps of Engineers regarding the property 5-Z sold to MGD, Zahn had stated, “[Ejvery-body knew it was in the bombing range.” George Sullivan, who also attended the meeting, testified that he overheard Zahn make a similar statement, but he could not verify if Zahn was referring to the property MGD purchased from 5-Z.
IsAccording to Zahn’s testimony, the meeting in Baton Rouge involved the entirety of the property located in the former Hammond Bombing and Gunnery Range, not just the property 5-Z sold to MGD. Zahn denied having made any statement suggesting that the property 5-Z sold to MGD was located in the former bombing range. He stated that at the time of the sale neither he nor, to the best of his knowledge, the members of 5-Z knew the property 5-Z sold to MGD was in the bombing range. Therefore, although there was conflicting testimony on this point, the trial court’s choice to credit that of Zahn over that of Davis was reasonable. See Stobart, 617 So.2d at 882-83.[2]
MGD’s contention that under the doctrine of contra non valentem, prescription did not begin to run until it discovered the defect in the property is also without merit. Although the doctrine of contra non valentem is a jurisprudential rule under which prescription may be suspended, see Carter, 892 So.2d at 1268, the date of discovery plays no part at all in determining the prescriptive period against such a seller. Wimberly v. Blue, 2008-1535 (La.App. 3d Cir.5/6/09), 11 So.3d 560, 563. To apply the discovery rule of contra non valentem to the sale of residential or commercial immovable property when that situation is the only one for which the legislature did not specifically provide for its application would render subparagraph (2) of La. C.C. art. 2534(A) redundant. Had the legislature intended the discovery rule to apply to this situation, it would have provided that the prescriptive period run from the date of discovery. Wimberly, 11 So.3d at 564; see also Bunch v. Town of St. Francisville, 446 So.2d 1357, 1360 (La.App. 1st Cir.1984) (it will not be presumed that the lawmaker inserted idle, meaningless, or superfluous language in the law or that it intended for any part or provision of the law to be meaningless, redundant, or useless).
Thus, applying the provisions of La. C.C. art. 2534A(2) under the appropriate standard of review, which is the manifest error/clearly wrong standard, MGD’s action for redhibition against 5-Z, a seller who did not know of the existence of the defect, prescribed in one year from March 2006, when delivery of the property was made to MGD. MGD’s lawsuit, filed on October 28, 2009, well over a year after delivery, was untimely. The trial court correctly sustained the objection of pre *1066 scription and dismissed MGD’s lawsuit against 5-Z. Accordingly, finding a reasonable factual basis to support the trial court’s conclusion that the claim was untimely asserted, the trial court correctly sustained the exception of prescription and dismissed MGD’s redhibition claim.
The trial court also correctly granted summary judgment in favor of 5-Z on its deficiency judgment action against Davis who, along with John Mills, another MGD member, signed the promissory note as a surety for MGD’s obligation. In reversing the trial court, the majority determined that because MGD’s redhibition claim was not prescribed, summary judgment on the deficiency judgment action was inappropriate, reasoning that Davis and Mills could assert any defenses available to the debt- or, including extinction of the claim as a result of any recovery on MGD’s redhibition claim.
The record established that 5-Z affirmatively pled and proved the existence of the obligation giving rise to the debt and the grounds of non-performance entitling it to maintain its judicial action. Further, 5-Z established by evidence that the property was sold under the executory proceeding, after appraisal, in accordance with the provisions of C.C.P. art. 2723 (providing for appraisal of the |inproperty unless it is waived), and that the proceeds received were insufficient to satisfy the balance of the performance then due. Davis and Mills did not rebut the existence of any of the elements necessary for 5-Z to obtain a deficiency judgment. Simply stated, none of the defects Mills and Davis allege are in the chain of authentic evidence supporting the executory process are “fundamental” so as to preclude a deficiency judgment.
The assertion by Davis and Mills that 5-Z is prohibited from use of the Louisiana Deficiency Judgment Act because 5-Z failed to include them as necessary parties in the executory process and failed to provide adequate notice to them is likewise without merit. In the promissory note executed by 5-Z and MGD, Mills and Davis appear as guarantors on the note. The Deficiency Judgment Act was not designed to protect accommodation parties who have no interest in the mortgaged property. See Chrysler Credit Corporation v. Breaux, 293 So.2d 261, 266 (La.App. 1st Cir.), writ denied, 294 So.2d 548 (La.1974). Sureties are not entitled either to notice of the foreclosure sale or the right to appoint an appraiser. See Cameron Brown South, Inc. v. East Glen Oaks, Inc., 341 So.2d 450, 458-59 (La.App. 1st Cir.1976).
Therefore, because 5-Z proved entitlement to summary judgment in its deficiency judgment action, and there are no outstanding issues of material fact, since I believe MGD’s redhibition claim is prescribed, I would affirm the trial court’s judgment on this basis as well. Lastly, I would remand the matter to the trial court to hold an evidentiary hearing for a determination of a reasonable amount of attorney’s fees.
For all these reasons, I dissent.

. Appeals are taken from judgments, not the written reasons for judgment. See Davis v. Farm Fresh Food Supplier, 2002-1401 (La.App. 1st Cir.3/28/03), 844 So.2d 352, 353-54.
Thus, to the extent that the trial court's finding that the property was purchased and developed for residential purposes is no longer an undisputed fact, mindful that the trial *1065 court’s judgment simply sustains the exception of prescription, the evidence should be reviewed to determine whether any implicit findings support the trial court's conclusion.

. MGD filed a motion for a new trial, suggesting it had discovered new evidence about 5-Z’s knowledge at the time of the sale and, on appeal, challenges the overruling of its motion. The new evidence consisted of Deputy Thomas R. Davidson’s testimony that he was also at the meeting in Baton Rouge and had overheard the statement made by Zahn. As the trial court noted, the new evidence did not show "the extent [that] this problem was known at the time of the sale.” Thus, because the testimony contains no new evidence that would change the result of this case, the trial court did not abuse its discretion in overruling the motion, particularly given the cumulative nature of the new evidence. See Thomas v. Comfort Center of Monroe, LA, Inc., 2010-0494 (La.App. 1st Cir. 10/29/10), 48 So.3d 1228, 1240.