CHASEZ, Judge.
Plaintiff, Jim Garrison, District Attorney for the Parish of Orleans, brought this injunction and abatement proceeding under LSA-R.S. 13 :4711 — 13 :4717 in the Civil District Court for the Parish of Orleans seeking to suppress nuisances at, and to padlock, the premises 418 Bourbon Street in New Orleans. Defendant, Leo Menendez, is owner of those premises, and defendant, Harry C. Mendoza, is the lessee thereof and •operates thereupon a night club styled “Guys and Dolls”.
The most pertinent section of the statute invoked is LSA-R.S. 13:4711, providing:
“Any building, structure, land watercraft or movable, in or upon which or any part of which, assignation, prostitution or obscenity as now defined or as may hereafter be defined by the Criminal Laws of this State, is carried on, conducted, continued or permitted or exists, and the furniture, fixtures, equipment and musical instruments, television receivers, phonograph or voice recording devices therein and other contents thereof are declared to be nuisances and shall be enjoined and abated as provided in R.S. 13:4711 through R.S. 13:4717. The owner of any building, structure, land, watercraft, or movable, and the officers of any corporation which is the owner, and the agent, representative and employee of any owner, and the lessee, sublessee or other occupants of any building, structure, land, watercraft or movable in or upon which, or any part of which, assignation, prostitution, or obscenity as now defined or as may hereafter be defined by the criminal laws of this state, is carried on, conducted, continued or permitted, or exists, shall be guilty of maintaining a nuisance, and shall be enjoined as provided in R.S. 13:4711 through R.S. 13:4717.
LSA-R.S. 13:4714 authorizes padlocking premises so used, and, unless released under bond as provided in LSA-R.S. 13:4715, the premises shall remain padlocked for a period of one year.
Plaintiff’s petition contained, among others, the allegation that “assignation, prostitution and obscenity” are practiced upon the subject premises, and that five named persons engaged in those practices thereupon on November 30, 1962.
Defendants excepted to the petition on several grounds.
ON THE EXCEPTIONS
1. The first objection was to the Court’s jurisdiction over the subject matter. Defendants’ contention is that Loui *858 siana Constitution, Art. 7, § 83, LSA, confers exclusive criminal jurisdiction in Orleans Parish upon the Criminal District Court; and that LSA-R.S. 13:4711-13:-4717, especially in its reference to “obscenity as * * * defined by the Criminal Laws of this State,” is a criminal statute which can be applied only by a court exercising criminal jurisdiction. The exception was properly overruled. The statute authorizes and this proceeding seeks a civil remedy, i. e., the enjoining and abating of a nuisance; the fact that maintaining the nuisance may also be a crime does not deprive the civil court of power to abate the nuisance. Hubert v. Claiborne Realty Co., La.App., 78 So.2d 249 (1955). The 1960 amendment of LSA-R.S. 13:4711, adding “obscenity as * * * defined [in] the Criminal Laws,” does not affect the reasoning and holding of the Claiborne Realty case.
2. The second objection, of no cause of action, was based on the theory that the statute is unconstitutional both (a) as written, in that by padlocking premises for a year, whether or not the owner has knowledge of the nuisances, the statute deprives the owner of his property without due process of law; and (b) as administered, in that the District Attorney’s past general nonenforcement of the statute shows denial of equal protection of the law to defendants by singling them out for padlock proceedings.
The first argument under the second objection is disposed of, for this Court, by the Louisiana Supreme Court in Parish of Orleans v. Brown, 147 La. 828, 86 So. 270 (1920), and the authorities therein cite.d with approval. The Court stated:
“Act 47 of 1918 declares houses of assignation or prostitution to be nuisances, and authorizes the district attorney to bring suit to abate same, and to enjoin the lessee, or other occupant, or inmate, and the owner thereof from carrying on same, and provides a penalty of fine or imprisonment, or both, for any violation of the injunction, and, further, that the house shall be directed to be closed, and not used for any purpose, during a period of one year; provided that the owner of the-building may obtain its release from said order of closure upon furnishing, bond ‘conditioned that he will * * *■ abate said nuisance and not permit the-use of the property, for the purpose o£ assignation or prostitution.’
“Defendant having been proceeded' against under this act as owner of building so used, and having been condemned, assails the constitutionality of said act on the ground that it deprives-her of her property without due process of law.
“Though she is appellant, no appearance has been made for her in this-court.
“The point she thus raises is obviously without merit, as has heretofore uniformly been decided. State ex rel. Wilcox v. Gilbert, 126 Minn. 95, 147 N.W. 953, 5 A.L.R. 1449; State ex rel. English v. Fanning, 96 Neb. 123, 147 N.W. 215; People ex rel. Thrasher v. Smith, 275 Ill. 256, 114 N.E. 31, L.R.A. 1917B, 1075.”
The second argument under the-second objection, that based on alleged unequal protection of the law, is in effect answered by City of New Orleans v. Levy, 233 La. 844, 98 So.2d 210 (1957). On rehearing, the Louisiana Supreme Court adopted the view that even unlawful administration of a statute is not a denial of equal protection “unless there is shown to-be present in it an element of intentional or purposeful discrimination”; and the Court therefore modified its original opinion so as to base its decree on the unavailability of the equitable remedy of injunction to a plaintiff who had “unclean hands” (the City having issued to another person similarly situated a permit to do- what it here sought to enjoin as violative of the zoning ordinance). In view of the Levy *859 case, we cannot find unconstitutional unequal protection where the record here discloses no element of intentional or purposeful discrimination. At most the record suggests that the District Attorney, after having generally omitted to seek civil remedies for this type of nuisance, in the past, has now begun to apply for civil remedies, in six cases filed at the same time. To hold that his mere failure to padlock similar establishments in the past constitutes denial ■of equal protection of the law, would be to hold that the District Attorney can repeal •or invalidate a statute merely by inaction.
A further argument of unconstitutionality is raised under the second objection to the petition, namely, that the statute itself affords unequal protection since the amendment of LSA-R.S. 13:4711 to add obscenity, without a companion .■amendment of LSA-R.S. 13:4715, relative to bonding the release of the property. This argument is based on a misreading of Sec. 4715. That section provides that, in ■any case, the property may be released on bond; one condition of the bond is non-use for “assignation or prostitution”, and thus the non-inclusion of obscenity in that condition simply means, at worst, that obscenity would not violate the condition of the bond — a conclusion rather inconsistent both with an intent to authorize padlocking for •obscenity, and with the bond’s further condition of abating the “nuisance”.
The second exception, that of no cause of action because of the alleged unconstitu-tionalities, was therefore properly overruled.
3. The third exception, of prematurity, was based on the contention that a criminal conviction must first be obtained before the civil proceedings can be brought. The statute clearly provides padlocking as an independent civil remedy, which may even be brought by a private citizen, LSA-R.S. 13:4712, who obviously could not prosecute (or force the District Attorney to prosecute) a criminal action to conviction prior to bringing the civil proceeding. This exception was also properly overruled.
4. The fourth exception, of vagueness, is directed in its pertinent parts against petitioner’s failure to state “where, when and with whom the alleged practice of prostitution, assignation and obscenity occurred.” Defendants on appeal base their objection primarily on the failure to name the undercover agents, and on the variety of meanings of “obscenity” as defined in LSA-R.S. 14:106.
Defendants’ argument on “obscenity” was not stated in their exception as filed below. LSA-C.C.P. Art. 924 requires the exception to “state with particularity the objections urged and the grounds thereof”; accordingly the indefiniteness of “obscenity” was not properly pleaded in the exception and that ground is urged too late to be considered on appeal.
On the question of the undercover agents’ names, the petition was not subject to the exception of vagueness. The petition recited with clarity the material facts; the names of witnesses to be used to prove the material facts is both immaterial and irrelevant to the cause of action stated in the petition, and the absence from the petition of their names did not render vague any allegation of material fact.
Defendant also filed motions to strike certain allegations as immaterial, and to “restrict the evidence” to material allegations only. As we appreciate the trial judge’s actions, he effectively granted these motions insofar as they relate to allegations and evidence indicating simple B-drinking. The evidence he properly admitted, which in fact did show B-drinking, was admissible, not to show simple B-drinking, but to show how the assignation, prostitution and obscenity activities were carried on.
The judge denied the motions insofar as they relate to evidence of solicitation for prostitution and for crimes against nature, being of the opinion that *860 such activities are included in the term assignation. We are in accord with that opinion, in view of the ordinarily understood dictionary definitions of assignation in the sense obviously meant in this statute.
Accordingly, defendants are not entitled to any modification of the judgment appealed from on the basis of their exceptions and motions.
ON THE MERITS
We pretermit, for the moment, the question of the credibility of plaintiff’s principal witnesses.
The evidence shows an overall operation of the night club which includes uninvited females presenting themselves to male patrons; a waiter bringing unordered (and high-priced) drinks for the females; provocative sexual advances by the females upon the persons of the male patrons when they object to paying for the unordered drinks to persuade payment for the drinks; and constant solicitation for champagne at the price of $60.00 per bottle, the price to include sexual intercourse, either naturally at the females’ apartment or elsewhere, or unnaturally (per os) at the rear booths of the club itself. As a further incitement and accompaniment to the offers, some of the females expose their sexual organs to the male patrons. All of the above practices were engaged in by some or all of the four females named in the petition, on the date named in the petition; and the one male named in the petition was the waiter rushing the unordered drinks to the table on that occasion. The five named persons were at that time employees of defendant Mendoza.
There can be no doubt that the evidence proves the “carrying on” and “existence” of assignation, obscenity, as defined by LSA-R.S. 14:106A(1), and prostitution as the term is utilized in the Claiborne Realty case and other authorities there cited. Defendants did produce the testimony of an experienced police matron that, from an external “frisking” of the females, she was sure they all wore underpants; and other evidence shows the females had no opportunity to don such garments between the time of the exposures testified to and' the “frisking”. However, we agree with the trial judge that the direct and positive testimony of exposure far outweighs defendants’ indirect evidence to the contrary.
The substantial question is that of the credibility of plaintiff’s undercover agents. One of these, Warren G. Moity, was strongly attacked, and the record reflects sufficient proof of past and present untruthfulness to raise grave questions of his veracity. On the other hand, Moity’s testimony is corroborated in all material aspects by the other undercover agent, one Malcolm Dodge. Dodge was not directly attacked, and the only contradiction of his testimony was on the question of whether or not it was prearranged with the District Attorney’s office to seek evidence specifically at the premises in question. While Moity testified no, as did Dodge, a police officer attached to the District Attorney’s office testified there was a definite, specific prearrangement, which we believe had to have been the case. However, because Dodge was only a member of a team, as it were, of which Moity was clearly the head, Dodge may not have known of the prearrangement, and we believe this minor matter does not raise any serious question of Dodge’s credibility.
The District Judge, in his reasons for judgment, notes the great care and attention he gave to these witnesses because of the credibility problem (of which he was aware because of an immediately previous padlocking case). He noted their withstanding of vigorous cross-examination of able counsel for defendants, and he particularly emphasizes his own function in deciding credibility by personal observation, as follows :
“In the final analysis, the credibility of any witness must rest upon the observation of the Court concerning the demeanor of the witness and his manner of answering questions. In short, the Court must make a determination *861 based upon its own experience in judging the truth or falsity of the testimony of witnesses, its knowledge of human nature and other related considerations. This Court is convinced beyond peradventure that the witnesses, Moity and Dodge, testified truthfully, and therefore the judgment in this case in accordance with the principles of law above set forth must be for the plaintiff.”
We find no error in the judgment appealed from, and it is therefore affirmed at appellants’ cost.
Affirmed.