WHIPPLE, J.
 

 [«This matter is before us on appeal by defendants, Tomey Perkins, Jr., Bay Lane, Inc., and Nathalan Perkins, from a judgment of the trial court granting an order of abatement pertaining to property in Den-ham Spring, Louisiana. For the reasons that follow, we affirm.
 

 FACTS AND PROCEDURAL HISTORY
 

 Tomey Perkins, Jr. is the owner of Bay Lane, Inc., a company he owns and operates, which, in turn, owns the property located at 436 Summers Street, Denham Springs, Louisiana. Mr. Perkins operates several businesses on the property, including a bar called Perkins Bar and Lounge. The bar has a dance floor, and often times, Mr. Perkins hires a band or “D.J.” to play music there to attract customers. Mr. Perkins holds an alcoholic beverage permit to sell alcoholic beverages at Perkins Bar and Lounge. Mr. Perkins also has an office on the premises for Bay Lane Remodels, a company he owns that remodels and repairs homes for rental. Mr. Perkins also owns and operates Perkins Motel at 436 Summers Street, where he rents apartments weekly or monthly. His daughter, defendant Nathalan Perkins, also known as Ninnie Perkins, operates Soul Food Café, a restaurant and bar at 436 Summers Street. Ms. Perkins likewise holds an alcoholic beverage permit from the city and state to sell alcoholic beverages at Soul Food Café.
 
 [1]
 

 
 *316
 
 On August 6, 2007, the City of Denham Springs (“the City”), through its attorney, issued a “Notice of Violation” to Bay Lane, Inc. and its President and Registered Agent, Tomey Perkins, Jr., as the record owner of the property located at 436 Summers Street, advising that “numerous prohibited activities have taken |3place on the premises ... rendering it subject to an action for abatement of a public nuisance.” The notice further explained that the City had evidence of “[p]ast and ongoing police investigations [that] reveal ... a pattern of drug-related criminal activity and criminal activity involving violence or weapons ... on the subject premises” and had witnesses who would testify to the pattern of criminal activity on the premises. The notice additionally provided that the City would be filing a “Petition for Injunctive Relief and Order of Abatement” to prohibit any and all business operations at 436 Summers Street. A similar notice was issued on that same day to Mr. Perkins in his individual capacity.
 

 On August 31, 2007, a “Supplemental Notice of Violation” was issued to include Gwendolyn Perkins Spikes, the Secretary/Treasurer and Registered Agent for Bay Lane, Inc., and Donna Grodner, attorney for Bay Lane, Inc. and Tomey Perkins, Jr., at Ms. Grodner’s request. The notice reiterated concern over a “pattern of drug-related criminal activity involving violence” at 436 Summers Street, citing numerous recent incidents of criminal activity and resulting charges that occurred on the premises and listing the charges associated with each incident and the date it occurred.
 
 [2]
 

 On December 7, 2007, the City of Den-ham Springs (“the City”) filed a petition for injunctive relief and order of abatement in accordance with the provisions of LSA-R.S. 13:4711,
 
 et seq.,
 
 naming Bay Lane, Inc., and its owner, Tomey Perkins, Jr., as defendants.
 
 [3]
 
 Therein, the City contended that the defendants have supported the maintenance of a nuisance by knowingly | permitting prohibited activity,
 
 ie.,
 
 a pattern of drug-related criminal activity and criminal activity involving violence or weapons, to exist on the property owned by defendants at the municipal address of 436 Summer Street, Denham Springs, Louisiana. Specifically, the City contended that Bay Lane, Inc. and/or Mr. Perkins d/b/a Perkins Motel and Lounge and/or Club Organize, have maintained a pattern of drug-related criminal activity and criminal activity involving violence or weapons for many years. The City contended that the aforementioned criminal activity was ongoing and occurs regularly on the premises. The City requested that a preliminary injunction issue in accordance with LSA-R.S. 13:4713, preventing the defendants and their respective officers, agents, representatives, employees, counsel, or any other person or persons in active con
 
 *317
 
 cert or participation with defendants from conducting, carrying on and/or knowingly permitting “prohibited activities” on the premises as defined in LSA-R.S. 13:4711. The City requested that after the proper hearings and delays, a permanent injunction and order of abatement issue and that the subject premises be closed for a period of five (5) years.
 

 After the defendants filed an answer and numerous exceptions to the City’s petition, the motion for preliminary injunction was heard by the trial court on January 17, 2008 and February 15, 2008. At the conclusion of the hearing, the trial court granted the preliminary injunction and signed an order prohibiting the defendants from knowingly permitting and/or supporting and/or committing the following acts on the premises: (1) criminal activity involving violence or weapons; (2) drug-related criminal activity; and (3) maintenance of a nuisance. The trial court also denied all of the exceptions urged by the defendants except the exception raising the objection of failure to name an indispensable party.
 
 [4]
 
 15Because the City subsequently amended its petition to include Nathalan Perkins as a defendant, however, the basis for this exception was effectively mooted.
 

 On March 7, 2008, the trial court heard the motion for permanent injunction and order of abatement. At the conclusion of the hearing, the trial court took the matter under advisement and instructed the parties to file post-trial memoranda to brief and discuss certain issues. On July 31, 2008, the trial court issued written reasons for judgment granting an order of abatement and closing the premises for a period of five years. In its written reasons, the trial court stated that the City had established, in accordance with the provisions set forth in LSA-R.S. 13:4715, that maintenance of a nuisance exists and that the owner knew of its existence. The trial court further denied defendants’ request that the court find the statute unconstitutional. A judgment and order of abatement was signed by the trial court on August 15, 2008.
 

 The defendants appeal, urging the following assignments of error:
 
 [5]
 

 1. The trial court lacked original subject matter jurisdiction and the City of Denham Springs did not have a right of action to close two businesses that hold liquor licenses and
 
 *318
 
 all other businesses on the premises where the Office of Alcohol and Tobacco Control (“ATC”) has sole original jurisdiction over revocation and suspension of liquor [ (¡licenses, and the regulations governing premises with alcohol licenses pre-empt the abatement statute.
 

 2. The trial court erred in finding that a cause of action for abatement had been stated where the petition failed to set forth factual allegations to meet the abatement statute requirements and failed to describe one instance wherein the proprietor “knowingly permitted” any prohibited activity.
 

 3. The trial court erred in entering an abatement order against the defendants where the plaintiffs failed to prove the proprietor “knowingly permitted” any prohibited activity.
 

 4. The trial court erred in failing to declare the abatement statute unconstitutional where it is overly broad and vague.
 

 5. The trial court erred in finding the notice sufficient where the notice at issue failed to place defendants on notice of any specific conduct of the proprietor to allege or demonstrate that the proprietor “knowingly permitted” a prohibited activity.
 

 6. The trial court erred in finding the action was not prescribed where the action against defendants was instituted more than six months from the date of the last incident.
 

 DISCUSSION
 

 Exceptions of Lack of Subject Matter Jurisdiction and No Right of Action (Assignment of Error No. 1)
 

 In this assignment of error, the defendants contend that the City has no legal right to close the bar or bar/restaurant located on the property through an abatement action or through any other action filed in the district court. Instead, the defendants contend that the ATC, through Title 26, has original subject matter | jurisdiction to enforce laws governing all aspects of the operation of premises permitted for alcohol consumption, which preempts the abatement statute.
 

 Subject matter jurisdiction is the legal power and authority of a tribunal to adjudicate a particular matter involving the legal relations of the parties and to grant the relief to which the parties are entitled. LSA-C.C.P. arts. 1 & 2;
 
 Captitol House Preservation Company, L.L.C. v. Perryman Consultants, Incorporated,
 
 2001-2524 (La.App. 1st Cir.12/31/02), 836 So.2d 680, 683,
 
 writs denied,
 
 2003-0323, 2003-0324 (La.4/21/03), 841 So.2d 794, 795. The Louisiana Constitution provides that district courts “have original jurisdiction of all civil and criminal matters” except as otherwise authorized by the constitution or except as provided by law for administrative agency determinations in workers’ compensation matters. LSA-Const. art. 5, § 16. A district court is considered to have general jurisdiction unless specifically denied it.
 
 Carter v. Jones,
 
 2007-297 (La.App. 3rd Cir.10/17/07), 967 So.2d 615, 619,
 
 writ denied,
 
 2007-2234 (La.1/25/08), 973 So.2d 756. Exceptions to the general rule that district courts are vested with original jurisdiction are to be generally construed.
 
 TIG Insurance Company v. Louisiana Workers’ Compensation Corporation,
 
 2004-2608 (La.App. 1st Cir.6/10/05), 917 So.2d 26, 29,
 
 writ denied,
 
 2005-1821 (La.1/27/06), 922 So.2d 553. The nature of the relief demanded is determinative of a trial court’s subject matter jurisdiction.
 
 Capitol House Preservation Company, L.L.C. v. Perryman Consultants, Incorporated,
 
 836 So.2d at 683.
 

 
 *319
 
 Here, the petition filed by the City seeks relief under Title 13, Chapter 32, Part 1, which provides for the abatement of public nuisances.
 
 [6]
 
 Louisiana Revised |sStatute 13:4712 provides that the issuance of an injunction or order of abatement may be petitioned for by “the governing authority of the respective municipality, parish, or consolidated city-parish government, through its attorney or other designated representative in the name of the respective municipality, parish, or city-parish government.” Although the defendants admit in their answer to the City’s petition that “the City of Denham Springs through its attorney is the proper party to bring an action pursuant to [LSA-R.S.] 13:4712,” the defendants argue that the City has no right to bring an action against these particular clubs because the ATC has exclusive subject matter jurisdiction.
 

 Louisiana Revised Statute 13:4713(A) outlines the procedure for application for injunctive relief by petition and sets forth the rebuttable presumptions that may be established by the petition, as follows:
 

 A. Application for injunctive relief afforded by this Section shall be by petition. A petition establishes a rebuttable presumption of prohibited activity if it identifies and supports by competent evidence two or more instances of drug-related criminal activity or criminal activity violence or weapons on or around the premises within the preceding five-year period. A petition establishes a rebuttable presumption that a proprietary party knowingly permitted the maintenance of a nuisance on the premises if the petition establishes by competent evidence that the proprietary party received a notice of violation from the attorney general of the state of Louisiana or from the district attorney, the sheriff, or the city or parish attorney for the municipality or parish within which the premises are located.
 

 As noted above, the City contends that the defendants have supported the “maintenance of a nuisance” by knowingly permitting a “prohibited activity,”
 
 ie.,
 
 a pattern of drug-related criminal activity and a pattern of criminal activity 19involving violence or weapons to occur on the “premises” for many years. Louisiana Revised Statute 13:4711 A(3) provided that “maintenance of a nuisance” means to conduct, carry on, or knowingly permit to exist on one’s premises a prohibited activity. A “prohibited activity” was defined as prostitution, obscenity, a pattern of drug-related criminal activity, or a pattern of criminal
 
 *320
 
 activity involving violence or weapons. LSA-R.S. 13:4711 A(7). “Premises” was defined as any building, structure, land, watercraft, or movable owned or occupied by any proprietary party or representative thereof. LSA-R.S. 13:4711 A(6).
 

 The City attached to its petition the three notices of violation issued to the defendants from the City’s attorney and affidavits from various law enforcement and narcotics officers outlining the details of nine specific incidents involving arrests for charges of armed robbery, illegal carrying of a weapon, attempted second degree murder, possession of cocaine with intent to distribute, possession of marijuana, possession of Schedule I, II, and III drugs with intent to distribute, resisting arrest, aggravated battery on a police officer, and disturbing the peace at 436 Summers Street in 2006 and 2007. As evidenced by the petition, affidavits, and notices of violation issued herein, the nature of the relief demanded herein by the City was aimed at preventing drug-related criminal activity and criminal activity involving weapons and violence. The very relief the City is seeking is specifically provided for under the abatement statutes. Courts have held that the relief sought under these statutes,
 
 ie.,
 
 the enjoining and abating of a nuisance, is a civil remedy over which the civil district courts have subject matter jurisdiction.
 
 See Garrison v. Menendez,
 
 158 So.2d 856, 858 (La.App. 4th Cir.1963),
 
 writ refused,
 
 245 La. 643, 160 So.2d 229 (1964).
 

 Contrariwise, the defendants point to no authority that denies the district court jurisdiction herein. Instead, in support of their argument that the ATC has | mexclusive original subject matter jurisdiction over this matter, the defendants merely rely on LSA-R.S. 36:458(E) and LSA-R.S. 26:792(2). Louisiana Revised Statute 36:458(E) provides that:
 

 The office of alcohol and tobacco control shall perform in accordance with the applicable laws and under the direction of the secretary, the functions of the state relating to the regulation of the sale of alcoholic beverages in the state, including certification of persons eligible for the issuance and renewal of permits required by law for persons engaging in the business of dealing in beverages of high or low alcoholic content, and the administration of the law relating to alcoholic beverages and their sale. Whenever the secretary deems necessary, he may reassign the responsibility for the collection of a tax or other duty assigned by this Subsection to this office to another office within the department created by this Section.
 

 (Emphasis added.)
 

 Louisiana Revised Statute 26:792 provides, in part, as follows:
 

 The commissioner [of alcoholic beverage control] shall have all of the powers and authorities provided in this Title in relation to:
 

 [[Image here]]
 

 (2) The issuance of orders for the suspension or revocation of permits issued to persons engaging in the business of dealing in beverages of high or low alcoholic content, and all hearings thereon shall be conducted by the commissioner in accordance with the provisions of R.S. 26:98 through R.S. 26:108, appeals from his rulings to be made directly to any court of competent jurisdiction[.]
 

 (Emphasis added.)
 

 After reviewing the statutes herein, we find no merit to the defendants’ claims that the above statutes, outlining the ATC’s general authority to regulate the sale of alcoholic beverages and to issue or
 
 *321
 
 revoke permits related thereto, govern the City’s claims for relief of a public nuisance,
 
 ie.,
 
 an alleged pattern of criminal activity involving drugs, weapons, and violent crimes that repeatedly occurred at the premises at 436 Summer Street as a whole, not merely at the two establishments that hold alcohol and liquor licenses. The City | n clearly has a right of action afforded to it by law to petition for the injunctive relief sought herein, and that relief is clearly provided for and governed by the abatement and injunctive relief provisions of LSA-R.S. 13:4711, et seq. Accordingly, we find no error in the trial court’s denial of the defendants’ exception of no right of action and lack of subject matter jurisdiction.
 

 This assignment of error lacks merit.
 

 Exception of No Cause of Action and Sufficiency of Notice (Assignments of Error Nos. 2 & 5)
 

 In these assignments, the defendants contend that the trial court erred in failing to maintain their peremptory exception of no cause of action and that the notices of violation issued herein to the defendants by the City were insufficient.
 

 A cause of action, for purposes of the peremptory exception, is defined as the operative facts that give rise to the plaintiffs right to judicially assert the action against the defendant.
 
 Walton Construction Company, L.L.C. v. G.M. Horne & Company, Inc.,
 
 2007-0145 (La.App. 1st Cir.2/20/08), 984 So.2d 827, 832. The function of the exception of no cause of action is to test the legal sufficiency of the petition by determining whether the law affords a remedy on the facts alleged in the petition.
 
 Walton Construction Company, L.L.C. v. G.M. Horne & Company, Inc.,
 
 984 So.2d at 832. In ruling on an exception of no cause of action, the court must determine whether the law affords any relief to the claimant if he proves the factual allegations in the petition and annexed documents at trial.
 
 Plaquemine Marine, Inc. v. Mercury Marine,
 
 2003-1036 (La.App. 1st Cir.7/25/03), 859 So.2d 110, 115. The burden of demonstrating that no cause of action has been stated is on the party filing the exception.
 
 Adams v. Owens-Corning Fiberglas Corporation,
 
 2004-1296 (La.App. 1st Cir.9/23/05), 921 So.2d 972, 975,
 
 writ denied,
 
 2005-2501 (La.4/17/06), 926 So.2d 514.
 

 |i2No evidence may be introduced to support or controvert the objection that the petition fails to state a cause of action. LSA-C.C.P. art. 931. For the purpose of determining the issues raised by the exception, all facts pled in the petition must be accepted as true.
 
 Ramey v. DeCaire,
 
 2003-1299 (La.3/19/04), 869 So.2d 114, 118. If the petition alleges sufficient facts to establish a cause of action cognizable in law, the exception raising the objection of no cause of action must fail.
 
 Walton Construction Company, L.L.C. v. G.M. Horne & Company, Inc.,
 
 984 So.2d at 832. A petition should not be dismissed for failure to state a cause of action unless it appears beyond doubt that the plaintiff can prove no set of facts in support of any claim which would entitle him to relief.
 
 Pelts & Skins, L.L.C. v. Louisiana Department of Wildlife and Fisheries,
 
 2005-0952 (La.App. 1st Cir.6/21/06), 938 So.2d 1047, 1053,
 
 writ denied,
 
 2006-1821 (La.10/27/06), 939 So.2d 1281. Any reasonable doubt concerning the sufficiency of the petition must be resolved in favor of finding that a cause of action has been stated.
 
 Walton Construction Company, L.L.C. v. G.M. Horne & Company, Inc.,
 
 984 So.2d at 832.
 

 In reviewing a trial court’s ruling sustaining an exception of no cause of action, the reviewing court conducts a
 
 de novo
 
 review, because the exception raises
 
 *322
 
 a question of .law, and the lower court’s decision is based only on the sufficiency of the petition.
 
 Plaquemine Marine, Inc. v. Mercury Marine,
 
 859 So.2d at 116.
 

 The defendants argue that the City’s petition failed to state a cause of action for abatement because it failed to set forth factual allegations or describe one incident where the proprietor “knowingly permitted” any prohibited activity in accordance with the abatement statute.
 

 To state a cause of action under LSA-R.S. 13:4713, “[a] petition establishes a rebuttable presumption that a proprietary party knowingly permitted the | ^maintenance of a nuisance on the premises if the petition establishes by competent evidence that the proprietary party received a notice of violation from ... the sheriff, or the city or parish attorney for the municipality or parish within which the premises are located.” LSA-R.S. 13:4713(A) (Emphasis added.). As set forth above, “maintenance of a nuisance” means to conduct, carry on, or knowingly permit to exist on one’s premises a prohibited activity. LSA-R.S. 13:4711(A)(3). The definition of a “prohibited activity” includes a pattern of drug-related criminal activity. LSA-R.S. 13:4711(A)(7).
 

 In its petition, the City specifically alleged that the “[defendants have supported the ‘maintenance of a nuisance’ by knowingly permitting to exist on the Premises a ‘prohibited activity,’ specifically a pattern of di’ug-related criminal activity and a pattern of criminal activity involving violence or weapons, as defined in § 13:4711.” In support, the petition referenced nine attached and detailed affidavits from Denham Springs Police Officers outlining the circumstances surrounding and charges resulting from numerous arrests made on the premises of 436 Summers Street, as well as the two August 6, 2007 “Notices of Violation” and the August 31, 2007 “Supplemental Notice of Violation” to defendants from the City’s attorney.
 

 On review of this exception of no cause of action, we must determine whether the law affords any relief to the City if the City proves the factual allegations set forth in their petition at trial. See
 
 Plaquemine Marine, Inc. v. Mercury Marine,
 
 859 So.2d at 115. If proven at trial, the abatement laws afford a remedy
 
 for
 
 the City’s allegation that defendants “knowingly permitted” a pattern of drug-related criminal activity and a pattern of criminal activity involving violence or weapons to exist on the premises. Contrary to the defendants’ assertions, the City was not required in its petition, in addition to its well-pled allegations, to describe the specific incidents where the proprietor knowingly 1 upermitted prohibited activity. Unlike a motion for summary judgment, in making the determination on an exception of no cause of action, all well-pleaded allegations of fact in the petition must be accepted as true.
 
 Pelts & Skins, L.L.C. v. Louisiana Department of Wildlife and Fisheries,
 
 938 So.2d at 1052-1053. Thus, we find the City alleged sufficient facts to establish a .cause of action cognizable under the abatement laws herein.
 

 With regard to the defendants’ claim that the notices of violation issued herein were insufficient, we note that LSA-R.S. 13:4711 A(4) defines “Notice of Violation” as a written notice advising the owner, tenant, occupant, operator, or other proprietary party of instances in which the premises have been used for prohibited activities and rendering the premises subject to an action for abatement of a public nuisance.
 

 As set forth above, the written notices issued on August 6, 2007, provided that “[p]ast and ongoing police investigations reveal that a pattern of drug-related crimi
 
 *323
 
 nal activity and activity involving violence or weapons takes place on the subject premises.” The notices further provided that the City had evidence of the investigations and numerous witnesses who were willing to testify about the pattern of criminal activity on the premises. The supplemental notice of violation issued August 31, 2007, set forth further details concerning “some of the more recent ‘instances’ of criminal activity that have occurred on or around said premises” and listed the date and charge resulting from each instance. All notices issued advised that the City would be filing a petition for injunctive relief and order of abatement to prohibit any and all future operations at 436 Summers Street.
 

 We reject the defendants’ argument that the City was required, through the notices of violation, to place the defendants “on notice of any act of them own.” Louisiana Revised Statute 13:4711 A(4) imposes no such requirement. The City | ]aadvised defendants of “instances in which the premises have been used for prohibited activities,” which is what it was required to do. Accordingly, we find that the trial court correctly determined that the notices of violation issued herein were sufficient and stated a cause of action.
 

 These assignments of error have no merit.
 

 Exception of Prescription (Assignment of Error No. 6)
 

 In this assignment of error, the defendants contend that the City’s action for abatement was untimely. Although the defendants concede that the abatement statute “does not contain an independent statute of limitations,” they argue that because the statute provides for a fine and/or imprisonment if the ultimate injunction and abatement order is violated, the statute is criminal in nature and would constitute a misdemeanor, which must be instituted within six months of the offense or is then barred. We disagree.
 

 Louisiana Revised Statute 13:4714 provides that if a person is found guilty of contempt of a court order issuing injunc-tive relief, such contempt is punishable by a fine of not less than one hundred dollars and not more than five hundred dollars, or by imprisonment in the parish prison for a period of not more than one year, or both. The action herein by the City is one for injunctive relief, not one of contempt.
 

 Moreover, the abatement statute authorizes, and abatement proceedings seek, a civil remedy,
 
 ie.,
 
 the enjoining and abating of a nuisance.
 
 Garrison v. Menendez,
 
 158 So.2d at 858. The fact that the penalties for contempt of an ultimate order of abatement or injunction may seem “criminal in nature” does not invoke application of the prescriptive periods for institution of criminal misdemeanor offenses, especially where these proceedings do not involve contempt of an injunction or order of abatement in accordance with the provisions | K;of LSA-R.S. 13:4714.
 
 Cf. Garrison v. Menendez,
 
 158 So.2d 856 (La.App. 4th Cir.1963),
 
 writ refused,
 
 245 La. 643, 160 So.2d 229 (1964). As such, we find no merit to defendants’ argument that the prescriptive period for criminal misdemeanors apply herein.
 

 As acknowledged by defendants, the abatement statutes provide no express prescriptive period for bringing an abatement action to abate a nuisance. Accordingly, we find the trial court correctly overruled the exception of prescription urged by defendants.
 
 [7]
 

 
 *324
 
 We find no merit to this assignment of error.
 

 “Knowingly Permitting” Prohibited Activity (Assignment of Error No. 3)
 

 In this assignment of error, the defendants contend that the trial court erred in finding that the owner/proprietor “knowingly permitted” maintenance of a nuisance.
 

 At the preliminary hearing and the final hearing on the order of abatement, the City introduced the testimony of six officers who were, or previously had been, employed by the Denham Springs Police Department. All of the officers testified that there were numerous and repeated criminal incidents and activity at 436 Summers Street. In connection with this testimony, the City introduced the regularly kept business records of the Denham Springs Police Department, or “incident log,” which evidenced the voluminous amount of criminal activity | ^occurring at 436 Summers Street. In a three-year period, the Denham Springs Police Department received 177 calls reporting criminal activity at 436 Summers Street. The criminal activity testified to by the officers involved in these arrests, as reflected in the incident reports, resulted in charges of armed robbery, aggravated battery, attempted murder, convicted felon in possession of a firearm, possession of cocaine, possession of marijuana, possession with intent to distribute crack cocaine, and resisting an officer. Many of these arrests involved repeat offenders and convicted felons.
 

 The Chief of the Denham Springs Police Department, Jeffery L. Wesley, testified that he desired that the abatement action be brought due to the high volume of criminal activity at 436 Summers Street. Chief Wesley had spoken to Mr. Perkins about some of the criminal incidents that occurred on his property. Mr. Perkins did not tell Chief Wesley that he was doing anything to prevent or deter this type of activity. Moreover, Chief Wesley testified that although measures could be taken to make the premises safer for the community and neighborhood, Mr. Perkins complained when the Denham Springs Police Officers were regularly on his premises.
 

 Corporal Russel Munsell testified as to the numerous times he was called to 436 Summers Street and the resulting arrests. Corporal Munsell testified that he had received calls from Nathalan Perkins reporting criminal activity on the premises on more than one occasion. Similarly, Corporal Larian McMurray of the Denham Springs Police Department had been called to 436 Summers Street to investigate criminal activity including violent crimes, shootings, and drugs. Officer McMurray testified that he had been called to 436 Summers Street by Nathalan Perkins in response to criminal activity on the premises.
 

 Officer Patrick Knab, an eighteen-year veteran and Detective Sergeant with the Denham Springs Police Department, testi
 
 *325
 
 fied that he specializes in narcotics 1 ^investigations. Detective Knab testified concerning his involvement with numerous undercover drug operations conducted at 436 Summers Street. He stated that the Denham Springs Police Department devoted more resources and officers to this one property than any other place in Denham Springs. Officer Scott Jones, a twenty-nine-year veteran of the Denham Springs Police Department, testified that he has “worked a lot of cases” at 436 Summers Street. He personally led the April 22, 2007 multiple-shooting investigation. Officer Jones stated that in doing so, he spoke to Mr. Perkins on many occasions, and that he could usually find Mr. Perkins at 436 Summers Street. Officer Jones testified that after the April 2007 shootings, he personally interviewed Nathalan Perkins.
 

 Officer Roger G. May, II of the Denham Springs Police Department testified that he was dispatched to a shooting that occurred in a club at 436 Summers Street on February 5, 2007. Officer May testified that the shooting was “called in” by Natha-lan Perkins.
 

 Mr. Perkins and Nathalan Perkins also testified. Although Mr. Perkins denied having any knowledge of specific arrests, he did acknowledge that he has had continuing problems with people coming into his bar and “then they want to start a big ruckus.” Mr. Perkins testified that he has called Chief Wesley for help and asked him to get the “dope heads” off of his property. Mr. Perkins further acknowledged that people were selling “dope” in his parking lot. He explained that he has witnessed people run up to cars when they pull in his parking lot to buy dope. Mr. Perkins further testified that there has been a history of gun activity and shootings on the premises, to the extent that he has had to use metal detectors at the door of the bar when expecting a large crowd on a given night. Although Mr. Perkins testified that he was not present, his employees had advised him of the fights and shootings that occurred at his bar within the previous two years. Despite this knowledge, Mr. Perkins testified that he does not hire | ,9bouncers or off-duty police officers to help with security, nor has he ever banned anyone from his premises.
 

 Nathalan Perkins admitted that she was aware of criminal activity involving the sale of drugs occurring in the parking lot at 436 Summers Street, but explained, “I try to tell them don’t sell drugs out there, but it don’t do no good.” Ms. Perkins readily testified that the problem still exists. When asked why she has not hired bouncers, off-duty police officers, security guards, or taken measures otherwise to curtail this activity, Ms. Perkins replied, “Why should I hire somebody to run outside when I’m inside?” With reference to the crimes that occur in the parking lot or in her club, Soul Food Café, when she is not present, Ms. Perkins stated that if she is not there, “it’s not [her] problem.”
 

 Considering the testimony and evidence of overwhelming criminal activity on the premises at 436 Summers Street, the testimony that the property owner and proprietor, Mr. Perkins, and proprietor, Natha-lan Perkins, were aware of this activity, and the fact the neither Mr. Perkins nor Nathalan Perkins took sufficient precautions or measures to curtail or eliminate this activity, we find the trial court correctly determined that they knowingly permitted these prohibited activities to exist. Although, at times, Mr. Perkins used a metal detector and summoned.the police, these measures were not commensurate with the level or severity warranted for the prevention of the serious and violent criminal activity that was repeatedly occurring on the premises. We further reject defendants’ argument that the City
 
 *326
 
 was required to show that the defendants “played a role” or were somehow involved in the ongoing criminal activity. Pursuant to the abatement statute, the City was required to show that the defendants knew of this activity and allowed it to exist.
 

 Accordingly, we find merit to this assignment of error.
 

 | gpConstitutionality of Abatement Statute (Assignment of Error No. 4)
 

 In this assignment of error, the defendants contend that the abatement statute, LSA-R.S. 13:4711, et seq., is unconstitutionally vague.
 

 In considering the constitutionality of a statute, Louisiana jurisprudence recognizes the general presumption of a statute’s constitutionality.
 
 Brown v. State, Department of Public Safety and Corrections, Louisiana Gaming Control Board,
 
 96-2204 (La.10/15/96), 680 So.2d 1179, 1180. The party that challenges the statute’s constitutionality carries the burden of proving specific constitutional infirmities.
 
 Huber v. Midkiff,
 
 2002-0664 (La.2/7/03), 838 So.2d 771, 776. Once a statute’s constitutionality is challenged, the attorney general must be notified by certified mail of the proceeding and, at his discretion, he shall be allowed to represent the state’s interest.
 
 Huber v. Midkiff,
 
 838 So.2d at 776.
 

 Louisiana Revised Statute 13:4448 sets forth the provisions requiring notice to the attorney general, as follows:
 

 Prior to adjudicating the constitutionality of a statute of the state of Louisiana, the courts of appeal and the Supreme Court of Louisiana shall notify the attorney general of the proceeding and afford him an opportunity to be heard. The notice shall be made by certified mail. No judgment shall be rendered without compliance with the provisions of this Section; provided where the attorney general was not notified of the proceeding, the court shall hold adjudication of the case open pending notification of the attorney general as required herein.
 

 Also, a statute must first be questioned in the trial court, not the appellate courts, and the unconstitutionality of a statute must be specifically pleaded and the grounds for the claim particularized.
 
 Vallo v. Gayle Oil Company, Inc.,
 
 94-1238 (La.11/30/94), 646 So.2d 859, 864-865. The unconstitutionality of a statute cannot be asserted in the appellate court unless it has been pleaded and made an issue in the court of first instance.
 
 Vallo v. Gayle Oil Company, Inc.,
 
 646 So.2d at 865.
 

 121 The pleadings allowed in civil actions are petitions, exceptions, written motions and answers. LSA-C.C.P. art. 852. Thus, when the unconstitutionality of a statute is specifically pled, the claim must be raised in a petition (original, amended, supplemental, or incidental), an exception, a motion or an answer. It cannot be raised in a memorandum, opposition, or brief as those documents do not constitute pleadings.
 
 Vallo v. Gayle Oil Company, Inc.,
 
 646 So.2d at 865. The requirement of specially pleading the unconstitutionality of a statute in pleadings implies that this notable issue will receive a contradictory hearing, wherein all parties will be affoi'ded the opportunity to brief and argue the issue.
 
 Vallo v. Gayle Oil Company, Inc.,
 
 646 So.2d at 865.
 

 The defendants first sought to raise their challenge to the constitutionality of LSA-R.S. 13:4711, et seq., in their answer. Therein, the defendants stated that to the extent that LSA-R.S. 13:4713 creates a rebuttable presumption once notice is issued to the defendants, the statute is “unconstitutional and violates due process
 
 *327
 
 provisions of the 14th Amendment.” Although not sufficient alone to raise their constitutional challenges, the defendants also discussed their claim that the statute is unconstitutionally “vague” and “broad” in their posthearing brief submitted to the trial court. On review, the transcripts of the trial of the preliminary injunction and final hearing reveal that the constitutionality of the statute was not argued before the trial court at those hearings, nor was a hearing held to specifically address the constitutionality of the statute. The trial court nonetheless stated in its reasons for judgment that it was not inclined to “hold the entire statute unconstitutional.”
 

 Importantly, however, the record does not show that the attorney general was notified by certified mail of the defendants’ challenge or served with their answer as required by LSA-R.S. 13:4448. Thus, because the defendants failed to notify the attorney general in accordance with the provisions of LSA-R.S. |2213:4448, the issue of constitutionality is not in a proper position for our consideration.
 
 See Johnson v. Aymond,
 
 97-1466 (La.App. 3rd Cir.4/1/98), 709 So.2d 1072, 1075.
 

 CONCLUSION
 

 Based on the above and foregoing reasons, the August 15, 2008 judgment of the trial court is affirmed. Costs of this appeal are assessed against the defendants/appellants, Tomey Perkins, Jr., Bay Lane, Inc., and Nathalan Perkins.
 

 AFFIRMED.
 

 DOWNING, J., concurs.
 

 [1]
 

 . Three to four years prior to trial, Mr. Perkins leased either the facility where Perkins
 
 *316
 
 Bar and Lounge is located or where Soul Food Café is located to a third party who operated a night club called "Club Organize” at 436 Summers Street. There is disputing testimony as to exactly which facility actually housed Club Organize.
 

 [2]
 

 . The dates of the offenses committed on the premises and the charges resulting therefrom, as alleged by the City in the supplemental notice, were: (1) 1/7/05 — Possession of Schedule I, II, and III drugs with intent to distribute; (2) 1/20/06 — Distribution of crack cocaine; (3) 1/26/06 — Possession of cocaine with intent to distribute; (4) Armed robbery; (5) 2/5/07 — Attempted 2nd degree murder; (6) 2/16/07 — Aggravated battery on a police officer; (7) 3/2/07 — Illegal carrying of a weapon; and (8) 4/22/07 — Attempted 2nd degree murder.
 

 [3]
 

 . Nathalan Perkins was subsequently added as a defendant in this matter by an amended and restated petition filed by the City on January 25, 2008.
 

 [4]
 

 . The defendants filed a writ application with this Court requesting that we exercise supervisory jurisdiction to review the trial court’s denial of their exceptions. The application was denied on February 14, 2008.
 

 [5]
 

 . Louisiana Revised Statute 13:4713(F) provides that an appeal of an order of abatement “shall be perfected within five calendar days from the rendition of the order and shall be made returnable to the appropriate appellate court in not more than fifteen calendar days from the rendition of the order.” The trial court issued written reasons for judgment on July 31, 2008. The defendants filed a motion for appeal on August 7, 2008, wherein they acknowledged the appeal delays set forth in LSA-R.S. 13:4713(F). In their motion for appeal, the defendants further prayed "that as [the trial court] enters an order of abatement[,] that it enter the order below setting the return date for the appeal not more than fifteen (15) days from the date of entry of the order of abate returnable to the First Circuit Court of Appeal." The "Judgment and Order of Abatement” was signed by the trial court on August 15, 2008.
 

 To the extent that defendants’ motion for appeal may seem premature, we note that any previously existing defect arising from a premature motion for appeal
 
 (i.e.,
 
 one taken before the signing of a final judgment) is cured once the final judgment has been signed.
 
 Overmier v. Traylor,
 
 475 So.2d 1094 (La.1985) (per curiam);
 
 Hanson v. Perkins,
 
 484 So.2d 705, 706 (La.App. 1st Cir.1985). Thus, this appeal is properly before us.
 

 [6]
 

 . By Acts 2008, No. 650, § 1, effective August 15, 2008, LSA-R.S. 13:4711(A), 13:4712, 13:4713(A) and (C)(2), and 13:4715 were amended and reenacted. In particular, the definition of "premises” set forth in LSA-R.S. 13:4711(6) was amended and reenacted as LSA-R.S. 13:4711(3) and includes the additional language: "Premises does not mean any premises which are regulated by Title 26 of the Louisiana Revised Statutes of 1950.” We note, however, that in the absence of contrary legislation, substantive laws apply prospectively only, whereas procedural and interpretive laws apply both prospectively and retroactively. LSA-C.C. art. 6; LSA-R.S. 1:2;
 
 Bourgeois v. Wiley,
 
 2002-1420 (La.App. 1st Cir.5/9/03), 849 So.2d 632, 636. Substantive laws are laws that impose new duties, obligations or responsibilities upon parties, or laws that establish new rules, rights and duties or change existing ones.
 
 Bourgeois v. Wiley,
 
 849 So.2d at 637. The act contains no legislative expression as to prospective or retroactive application of this amendment. Thus, because the amendment herein affects the substantive rights of the parties, it applies only to causes of action arising after its effective date.
 
 Bourgeois v. Wiley,
 
 849 So.2d at 637-638. Accordingly, we apply the provisions of the abatement law in effect at the time the petition was filed herein.
 

 [7]
 

 . Nonetheless, to the extent that defendants argue that the action herein was not instituted within the allotted time period, we note that according to the abatement statutes, the City's
 
 *324
 
 petition establishes a rebuttable presumption of prohibited activity if it identifies and supports two or more instances of drug-related criminal activity or criminal activity involving weapons or violence on or around the premises within the preceding five-year period. LSA-R.S. 13:4713(A). A "prohibited activity” is a pattern of drug-related criminal activity or criminal activity involving weapons or violence. LSA-R.S. 13:4711 A(7). A "pattern” is defined as two or more instances of criminal activity within a three-year period. LSA-R.S. 13:4711 A(5). In the petition filed on December 7, 2007, the City cites nine instances of drug-related criminal activity and criminal activity involving weapons and violence on the premises that occurred in 2004, 2005, 2006, and 2007, well within the preceding five-year period necessary to establish a rebuttable presumption of prohibited activity.