**NOT DESIGNATED FOR PUBLICATION**

STATE OF LOUISIANA

COURT OF APPEAL

FIRST CIRCUIT

2022 CA 0736R

MICHAEL DESPAROIS

VERSUS

TIMMONS INTERNATIONAL, LLC

Judgment Rendered: _____**NOV 1 5 2024**_____

\* \* \* \* \*

APPEALED FROM THE NINETEENTH JUDICIAL DISTRICT COURT
IN AND FOR THE PARISH OF EAST BATON ROUGE
STATE OF LOUISIANA
DOCKET NUMBER 655392

HONORABLE RICHARD "CHIP" MOORE, III, JUDGE PRESIDING

\* \* \* \* \*

Drew E. Nordgren
Baton Rouge, Louisiana
Donald J. Miester, Jr.
New Orleans, Louisiana

And

Walter Landry Smith
Baton Rouge, Louisiana

Attorneys for Plaintiff-Appellee
Michael DesParois

Claude F. Reynaud, Jr.
Carroll Devillier, Jr.
Danielle L. Borel
Baton Rouge, Louisiana

Attorneys for Defendant-Appellant
Timmons International, LLC

BEFORE: McCLENDON, CHUTZ, HESTER, GREENE, AND STROMBERG, JJ.

Chutz, J. concurs.
Stromberg J. dissents for the reasons assigned by J. McClendon
McClendon J. dissents and assigns reasons.

**GREENE, J.**

In this case, the plaintiff filed suit for redhibition against the seller of a used 2009 International Truck. The trial court found a redhibitory defect in the truck and awarded plaintiff the purchase price, financing costs, maintenance and preservation costs, consequential damages, attorney fees, and expert witness fees. After manifest error review, we reverse and render.

## FACTS AND PROCEDURAL HISTORY

On April 4, 2016, Michael DesParois purchased a 2009 Caterpillar International Truck with over 340,000 miles on the odometer, along with a third-party engine warranty, from Timmons International, LLC in Baton Rouge for approximately $34,452.00.[1] At that time, Timmons bought, sold, leased, and rented new and used 18-wheeler trucks. Timmons had purchased the truck from an auction in Tunica, Mississippi, made minor repairs to it, and subsequently sold it to Mr. DesParois. After the purchase, Mr. DesParois parked the truck for a few weeks, during which time he saw no evidence of an oil leak. He then drove the truck to Texas, after which he noticed a "black spot" but was not sure if it was oil or dirt, or whether it even came from his truck. He testified that the truck was driving just fine on that first trip.

Mr. DesParois then drove the truck for three weeks across the country, including to Texas, Minnesota, Illinois, and Iowa. On June 2, 2016, Mr. DesParois had his mechanic change the air dryer cartridge on the truck with one he had purchased himself. Mr. DesParois continued to drive the truck through the summer of 2016.

In August of 2016, Mr. DesParois saw heavy oil residue on the air dryer that he had changed out and drove the truck to Pennsylvania, where he had the air compressor replaced at Hunter Truck Sales & Service, Inc. (Hunter) on August 25, 2016. After a road test, Hunter noted that "no blow by" was found and that there were no leaks at the compressor. Mr. DesParois testified that he started to see oil residue two days later. After noticing the oil residue, Mr. DesParois drove back to Baton Rouge and then on to Dallas. On September 22, 2016, Mr. DesParois brought the truck to Lonestar Truck Group

---

[1] We note that two different numbers are given for the purchase price of the truck in the record: $34,452.00 and $35,452.00. Also, the trial court's reasons give the purchase price as $36,108.02.

2

(Lonestar) in Shreveport, which replaced the air compressor installed by Hunter. Lonestar checked for excessive blow by at the dipstick tube and found none. Both Hunter and Lonestar told Mr. DesParois that Hunter may have installed a defective air compressor. Hunter told Mr. DesParois that the issue should be addressed with Caterpillar, the manufacturer of the engine. Mr. DesParois did not address the issue with Caterpillar. After this, Mr. DesParois continued to drive the truck.

Five weeks later, on October 31, 2016, Mr. DesParois brought the truck back to Lonestar. In November of 2016, Mr. DesParois notified Timmons that the truck had been dismantled at a repair shop in Shreveport (Lonestar) and needed repairs. At that time, Mr. DesParois had driven the truck as a commercial hauler for seven months, traveling more than 50,000 miles across the United States. Timmons declined to fund the repairs. After partially dismantling the engine, Lonestar parked the truck outside.

Thereafter, on February 15, 2017, Mr. DesParois filed suit for redhibition, breach of contract, and breach of implied warranties, seeking the return of the purchase price, collateral costs, finance charges, preservation costs, damages, penalties, and attorney fees. Timmons answered the suit, denying the allegations and maintaining that Mr. DesParois failed to state a cause of action against it and had failed to mitigate his damages. Timmons asserted that the truck was sold with a disclaimer of warranties, that Mr. DesParois purchased a warranty on the Caterpillar engine from Premium 2000+ Warranties and must include that company as an indispensable party, and that the vehicle did not contain any defects or vices at the time of sale. Alternatively, Timmons asserted that if the truck contained a defect or vice, it had no knowledge of the defect or vice. Further, Timmons stated that it had acted in good faith, the vehicle was reasonably fit for its ordinary use, any alleged defect was the product of wear and tear, and the vehicle was not rendered useless by the alleged defects. Additionally, Timmons asserted that Mr. DesParois waived his right to claim redhibition by failing to tender the vehicle to it for repair. Timmons alternatively asserted that it was entitled to a credit for Mr. DesParois' use of the vehicle and that Mr. DesParois was not entitled to damages, costs, or attorney fees. Lastly, Timmons asserted all affirmative defenses that may apply.

Thereafter, Timmons filed a motion for summary judgment. The motion for summary judgment was denied. The matter proceeded to a bench trial. Thereafter, the trial court ruled in favor of Mr. DesParois and against Timmons. The trial court found that the truck had a redhibitory defect and determined that Timmons had knowledge of a defect at the time of the sale. The trial court awarded Mr. DesParois $35,452.00 for the purchase price of the truck, $28,903.94 for the interest paid for financing one-half of the purchase price of the truck, $14,510.69 for the maintenance and preservation of the truck, $35,000.00 for attorney fees, $362,448.00 for consequential damages, and $500.00 for expert witness fees. Timmons appealed that judgment.

This Court found legal error, conducted a *de novo* review, and reversed the trial court judgment. **DesParois v. Timmons International, LLC**, 2022-0736 (La. App. 1 Cir. 12/20/23), 2023 WL 8794948 (unpublished). Mr. DesParois filed a writ of certiorari with the Louisiana Supreme Court. The Louisiana Supreme Court granted the writ application, reversed the finding of legal error, and remanded the case with instructions to review the case under the manifest error standard of review. **DesParois v. Timmons International, LLC**, 2024-00216 (La. 4/9/24), 382 So.3d 815 (per curiam).

## THE APPEAL

Timmons makes the following assignments of error on appeal.

1. Because both [Mr.] DesParois' and Timmons' expert agreed that there is no evidence of a defect in the [truck] at the time of sale, Timmons' motion for summary judgment . . . should have been granted.

2. The [trial court] erred in relying on hearsay evidence to reach its conclusion, which the [trial court] explicitly excluded from evidence.

3. The [trial court] manifestly erred in finding a redhibitory defect was present at the time of sale to [Mr.] DesParois where no witness, including [Mr.] DesParois' hired expert, could testify to the existence of a defect at the time the [truck] was sold and the uncontradicted evidence showed the CGI Pipe was brand new when the [truck] was sold to [Mr.] DesParois on April 4, 2016.

4. The [trial court] manifestly erred in finding Timmons was in bad faith because it "had actual knowledge of the defective CGI Pipe and failed to inform [Mr.] DesParois at the time of sale" where [there] is no evidence that the CGI Pipe was "defective", let alone that anyone [at] Timmons "had actual knowledge" the CGI Pipe was defective at the time of sale.

5. The [trial court] erred in finding Timmons liable when [Mr.] DesParois did not put Timmons on notice of the alleged defect until seven months

4

after the purchase and after the [truck] had been worked on and the engine dismantled in Shreveport, by another repair shop.

6. The [trial court] erred when it found, as a matter of law, that a seller cannot assert the lack of tender of a vehicle for repair as a substantive defense if it did not file a dilatory exception of prematurity.

7. The [trial court] erred in awarding over $475,000 in damages, including $362,448.00 in lost profit to DesParois for a [truck], purchased for $36,108.02, when there was absolutely no evidence in the record supporting such an outrageous, punitive award, much less with reasonable certainty.

8. The [trial court] erred in awarding damages of lost gross revenue, instead of lost profit.

## REDHIBITION

Louisiana Civil Code article 2520 provides:

The seller warrants the buyer against redhibitory defects, or vices, in the thing sold.

A defect is redhibitory when it renders the thing useless, or its use so inconvenient that it must be presumed that a buyer would not have bought the thing had he known of the defect. The existence of such a defect gives a buyer the right to obtain rescission of the sale.

A defect is redhibitory also when, without rendering the thing totally useless, it diminishes its usefulness or its value so that it must be presumed that a buyer would still have bought it but for a lesser price. The existence of such a defect limits the right of a buyer to a reduction of the price.

Louisiana Civil Code article 2521 provides that the seller owes no warranty for defects in the thing that were known to the buyer at the time of the sale, or for defects that should have been discovered by a reasonably prudent buyer of such things.

Louisiana Civil Code article 2522 provides:

The buyer must give the seller notice of the existence of a redhibitory defect in the thing sold. That notice must be sufficiently timely as to allow the seller the opportunity to make the required repairs. A buyer who fails to give that notice suffers diminution of the warranty to the extent the seller can show that the defect could have been repaired or that the repairs would have been less burdensome, had he received timely notice.

Such notice is not required when the seller has actual knowledge of the existence of a redhibitory defect in the thing sold.

Thus, in a suit for redhibition, the plaintiff must prove: (1) the seller sold the thing to him and it is either absolutely useless for its intended purpose or its use is so inconvenient or imperfect that had he known of the defect, he would never have purchased it; (2) the thing contained a non-apparent, or latent, defect at the time of sale;

5

and (3) the seller was given an opportunity to repair the defect.  **Walton Const. Co., L.L.C. v. G.M. Horne & Co., Inc.**, 2007-0145 (La. App. 1 Cir. 2/20/08), 984 So.2d 827, 834.

Inherent in the sale of an older truck is the knowledge that the machinery and parts are worn and subject to breakdown and that the vehicle will require mechanical work from time to time to keep it in running condition.  **Burch v. Durham Pontiac Cadillac, Inc.**, 564 So.2d 380, 383 (La. App. 1 Cir.), writ denied, 569 So.2d 968 (La. 1990).

## ASSIGNMENT OF ERROR NUMBER TWO

In assignment of error number two, Timmons maintains that the trial court erred in relying on hearsay evidence to reach its conclusion after explicitly excluding that evidence.  Alleged evidentiary errors must be addressed first on appeal, inasmuch as a finding of error may affect the applicable standard of review.  **Duncan v. Gauthier**, 2022-0444 (La. App. 1 Cir. 12/22/22), 2022 WL 17847348, at *4 (unpublished).

The records at issue, repair invoices from Lonestar, were admitted into evidence pursuant to the Joint Stipulation Regarding Admissibility of Certain Documents and Designated Deposition Testimony, and in any event, did not interdict the fact-finding process contained in the trial court's ruling.  See **DesParois**, 382 So.3d at 815.  Thus, this assignment of error has no merit.

## ASSIGNMENT OF ERROR NUMBER THREE

In assignment of error number three, Timmons maintains that the trial court manifestly erred in finding a redhibitory defect was present at the time of the sale of the truck.

Mr. DesParois' expert witness in diesel mechanics, Randy Hendrickson, testified by deposition.  Mr. Hendrickson inspected the truck at the end of 2018 or beginning of 2019, two years after it was left at Lonestar.  The only defect identified by Mr. Hendrickson in his inspection of the truck was a hole in the CGI (clean gas induction) pipe.  Mr. Hendrickson did not establish a defect in the truck *at the time of sale.* Mr. Hendrickson testified as follows:

[Attorney]  And when you did look at the truck at the end of [2018], beginning of 2019, did you think there was a defect at that time?

[Mr. Hendrickson]  Well, yes.  It's very evident with that hole.

[Attorney]  So the hole in the CGI [p]ipe is the defect?

[Mr. Hendrickson]  Correct.

[Attorney]  But you have no idea about when the truck was purchased if there was a defect?

[Mr. Hendrickson]  No, Ma'am, I don't.

Mr. Hendrickson further testified:

[Attorney]  Mr. DesParois is alleging that when he bought this truck, there was a defect in the truck.  Do you think there was a defect in the truck?

[Mr. Hendrickson]  I have no idea.  I did not see the truck when he bought it.

Mr. Hendrickson also testified:

[Attorney]  What causes a pipe like the CGI pipe to get a hole in it?

[Mr. Hendrickson]  There's a number of things that could cause that.

[Attorney]  What are those things?

[Mr. Hendrickson]  Did it get hit, does it rub on something, is it a faulty material, is it a faulty manufacturing process.  I mean, it's countless what could cause it.

[Attorney]  Could it be the product of normal wear and tear on a truck?

[Mr. Hendrickson]  Yes.

[Attorney]  Do you know what caused the hole in this CGI [p]ipe?

[Mr. Hendrickson]  No clue.

The implied warranty against redhibitory defects covers only hidden defects, not defects that were known to the buyer at the time of the sale, or defects that should have been discovered by a reasonably prudent buyer of such things.  La. C.C. art. 2521.  To prevail in such a proceeding, the plaintiff must also prove that the defect existed at the time of the sale, and that he afforded the seller an opportunity to repair the thing. **Gaston v. Bobby Johnson Equip. Co., Inc.**, 34,028 (La. App. 2 Cir. 11/03/00), 771 So.2d 848, 852.  A buyer of an automobile who asserts a redhibition claim need not show the particular cause of the defects making the vehicle unfit for the intended purposes,

but rather must simply prove the actual existence of such defects. **Young v. Ford Motor Co., Inc.**, 595 So.2d 1123, 1126 (La. 1992).

In this case, Mr. DesParois's own expert, Mr. Hendrickson, testified that he could not say whether there was a defect in the truck when Mr. DesParois bought it. After manifest error review, which included review of the repair invoices from Lonestar, we find that the trial court manifestly erred in finding there was a defect in the truck when Mr. DesParois purchased it. The trial court inferred that the CGI pipe was defective at the time of sale; however, the CGI pipe was replaced by Timmons prior to the sale of the truck to Mr. DesParois. No evidence was presented to show that the new CGI pipe was defective at the time of sale. Hunter installed a new air compressor in the truck on August 25, 2016, and Mr. DesParois testified that two days later he started seeing oil issues. Both Hunter and Lonestar told Mr. DesParois that Hunter may have installed a defective air compressor and Hunter told Mr. DesParois that the issue should have been addressed with Caterpillar, the engine manufacturer. The issue was never addressed with Caterpillar.

This assignment of error has merit. As we have determined that the trial court committed manifest error in its finding that a redhibitory defect was present at the time of the sale of the truck, we need not address the remaining assignments of error.

## CONCLUSION

For the foregoing reasons, the trial court judgment is reversed. Judgment is hereby rendered in favor of defendant, Timmons International, LLC, dismissing the claims of plaintiff, Michael DesParois, with prejudice. The costs of this appeal are assessed against Michael DesParois.

**REVERSED AND RENDERED.**

STATE OF LOUISIANA

COURT OF APPEAL

FIRST CIRCUIT

2022 CA 0736R

MICHAEL DESPAROIS

VERSUS

TIMMONS INTERNATIONAL, LLC

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

**McClendon, J., dissenting in part.**

I disagree with the majority's conclusion that the trial court manifestly erred in finding a redhibitory defect in the truck purchased by Michael DesParois. It is well settled that a court of appeal may not set aside a trial court's finding of fact in the absence of manifest error or unless it is clearly wrong. **Stobart v. State through Dept. of Transp. and Development,** 617 So.2d 880, 882 (La. 1993). The issue to be resolved by a reviewing court is not whether the trier of fact was right or wrong, but whether the factfinder's conclusion was a reasonable one. **Housley v. Cerise,** 579 So.2d 973, 976 (La. 1991); **Sistler v. Liberty Mutual Ins. Co.,** 558 So.2d 1106, 1112 (La. 1990). The reviewing court must always keep in mind that if the trial court's findings are reasonable in light of the record reviewed in its entirety, the court of appeal may not reverse, even if convinced that had it been sitting as the trier of fact, it would have weighed the evidence differently. **Housley,** 579 So.2d at 976; **Sistler,** 558 So.2d at 1112.

In this matter, the record establishes that after Mr. DesParois's first use of the truck in May of 2016, he observed an oil mist near the truck's air brake dryer. As a result, Mr. DesParois replaced the air filter in the air brake dryer. Then, in August of 2016, on a delivery trip to Pennsylvania, the oily substance reappeared and continued to worsen during the trip. This required Mr. DesParois to bring the truck to Hunter Truck Sales & Service, Inc. near the delivery site in Pennsylvania, in order to determine the cause of the oil being emitted. Following Hunter's inspection, Mr. DesParois was informed that the air compressor needed to be replaced. After having the part replaced, he returned

to Baton Rouge.[1] However, after only two days, the oil emissions reappeared. Again, in September of 2016, on a return trip from Dallas, Mr. DesParois observed that the air brake dryer was leaking a large amount of oil. Accordingly, he stopped at Lonestar Truck Group in Shreveport to have the problem inspected. Lonestar determined that the air compressor installed by Hunter was probably defective and replaced it. Shortly thereafter, back in Baton Rouge, Mr. DesParois again noticed oil blowback, which required the replacement of the air dryer on September 28, 2016. Approximately one month later, on October 31, 2016, while in route to Dallas, the truck started spewing large amounts of oil. This required another trip to Lonestar, where it was determined that the truck was inoperable. The explanation given to Mr. DesParois by Lonestar was that the CGI pipe was defective and that the truck was unable to complete a regeneration cycle, which resulted in total engine failure.

Randy Hendrickson, Mr. DesParois's expert diesel mechanic, testified by deposition as to the cause of the engine failure. As the air compressor had been replaced on two occasions, Mr. Hendrickson opined that the continued presence of increased pressure was the result of internal damage somewhere in the engine. He testified that he observed holes in the CGI pipe, which would alter air flow mass resulting in the inability of the engine to complete a regeneration cycle. Mr. Hendrickson believed that dirt infiltrated the motor and acted like sandpaper in the engine, making the holes in the CGI pipe a reason for the failure of the engine to regenerate.

The record is clear that Mr. DesParois's truck was emitting oil from its first delivery and that this continued to be an issue until the truck became inoperable on October 31, 2016. The trial court was presented with evidence that could reasonably support a conclusion that a redhibitory defect was present in Mr. DesParois's truck and existed at the time said truck was purchased from Timmons. Based on the record before us, I cannot find that the trial court manifestly erred in finding the existence of a redhibitory defect at the time of the sale. Accordingly, I find that the majority errs in holding that

---

[1] Mr. DesParois testified at trial that, after returning to Baton Rouge, he was at Timmons and talked to someone named John about repairs to his truck. However, John informed Mr. DesParois that Timmons did not work on Caterpillar engines and that he would have to go to Peterbilt next door for work on his truck engine. Mr. DesParois also testified that he contacted Peterbilt, but because of the flooding in Baton Rouge in August of 2016, Peterbilt was unable to look at or work on his truck at that time.

2

the trial court was manifestly erroneous or clearly wrong in its factual determination as to the existence of the redhibitory defect.

However, the record fails to establish a reasonable basis for the trial court's finding that Timmons had actual knowledge that the CGI pipe was defective at the time of the sale of the truck to Mr. DesParois or that Timmons concealed oil pressure problems from Mr. DesParois at the time of the sale.

Therefore, I respectfully dissent in part.